# Exhibit A



**FEDERAL ELECTION COMMISSION**
Washington, DC 20463

**VIA ELECTRONIC MAIL**

Claire Rajan
Allen & Overy LLP
1101 New York Avenue, NW
Washington, DC  20005
claire.rajan@allenovery.com

January 11, 2023

RE:     MUR 7991

Dear Ms. Rajan:

On May 2, 2022, the Federal Election Commission notified your client, Google LLC, of a complaint indicating violations of the Federal Election Campaign Act of 1971, as amended.  On January 10, 2023, the Commission, on the basis of the information provided in the complaint and information provided by your client, found no reason to believe that Google, LLC, made prohibited in-kind corporate contributions in violation of 52 U.S.C. § 30118(a) and 11 C.F.R. §§ 109.21, 114.2.  Accordingly, the Commission closed its file in this matter.

Documents related to the case will be placed on the public record within 30 days.  *See* Disclosure of Certain Documents in Enforcement and Other Matters, 81 Fed. Reg. 50,702 (Aug. 2, 2016).  The Factual and Legal Analysis, which explains the Commission's findings, is enclosed for your information.

If you have any questions, please contact Justine A. di Giovanni, the attorney assigned to this matter, at (202) 694-1574 or jdigiovanni@fec.gov.

Sincerely,

*Peter G. Blumberg*

Peter G. Blumberg
Assistant General Counsel

Enclosure:
  Factual and Legal Analysis

|   |   |
|---|---|
| FEDERAL ELECTION COMMISSION | |
| FACTUAL AND LEGAL ANALYSIS | |

RESPONDENTS:  Google, LLC                                                                      MUR 7991
Biden for President and Keana Spencer
in her official capacity as treasurer

I.        INTRODUCTION

This matter arises from a Complaint alleging that the spam filter associated with Google's email platform, Gmail, disproportionately flagged Republican campaign emails as spam during the 2020 election cycle.  The Complaint alleges that the spam filter thereby eliminated a major source of political fundraising for Republican candidates and undermined their ability to communicate their messages to the public, resulting in prohibited corporate in-kind contributions to Biden for President and other, unnamed Democratic candidates in violation of the Federal Election Campaign Act of 1971, as amended (the "Act").  In line with the Commission's recent precedent, because Google credibly asserts that its spam filter is applied on a politically neutral basis and for a commercial purpose, the Commission finds no reason to believe that Google, LLC, made, and Biden for President and Keana Spencer in her official capacity as treasurer knowingly accepted, prohibited in-kind corporate contributions in violation of 52 U.S.C. § 30118(a) and 11 C.F.R. §§ 109.21, 114.2.

I.        FACTUAL BACKGROUND

A.        The Parties and the Gmail Email Platform

Google, LLC, is a technology company owned by Alphabet Inc., a publicly traded Delaware corporation headquartered in Mountain View, California.[1]  It provides a number of services, including its email platform, Gmail, which Google describes as "the world's largest

---

[1]    Google Resp. at 3 (June 17, 2022).

email platform" with "[m]ore than 1.5 billion people" using it on a monthly basis.[2] Google states that it generates revenue by selling paid advertising so that consumers can use the product for free; in addition, Google describes Gmail as a "foundational component of the 'Google Workspace' product, which bundles a set of secure collaboration and productivity apps created for businesses of all sizes and which can be purchased for a fee."[3]

According to its most recent annual report filed with the U.S. Securities and Exchange Commission, Google states that its

> brands have been, and may in the future be, negatively affected by . . . reputational issues, third-party content shared on our platforms, . . . and product or technical performance failures. . . . Our success will depend largely on our ability to remain a technology leader and continue to provide high-quality, trustworthy, innovative products and services that are truly useful and play a valuable role in a range of settings.[4]

To "provide a better experience for [its] users," and thus "maintain the Gmail brand, business, and financial condition," Google implements a spam filter policy that it asserts in its Response "appl[ies] to emails from all senders . . . whether they are politically affiliated or not."[5] Google states that "Gmail's filtering capabilities and security protections are built to give users the best overall Gmail experience by delivering the emails they want to see" and that providing this service is "integral to Google's purpose."[6]

---

[2]     *Id.* at 4.

[3]     *Id.* Google notes that "[m]ore than five million paying businesses use Gmail in the workplace." *Id.*

[4]     Alphabet Inc., 2021 U.S. Secs. & Exch. Comm'n Form 10-K Annual Report at 12 (Feb. 1, 2022) [hereinafter Alphabet 2021 10-K], https://abc.xyz/investor/static/pdf/20220202_alphabet_10K.pdf.

[5]     Google Resp. at 4-5, 9.

[6]     *Id.* at 5.

MUR 7991 (Google, LLC, *et al.*)
Factual and Legal Analysis
Page 3 of 14

1    Biden for President is the authorized campaign committee of 2020 Democratic

2    presidential candidate Joseph R. Biden, Jr., and Keana Spencer is its treasurer.[7]

3    **B.    The NCSU Study**

4    In March 2022, the North Carolina State University Department of Computer Science

5    released an academic study (the "NCSU Study") intended to identify political biases in spam

6    filtering algorithms ("SFAs") as applied by three email platforms: Google's Gmail, Microsoft's

7    Outlook, and Verizon's Yahoo! Mail.[8]  To perform this analysis, the NCSU Study's authors

8    created 102 email accounts which they subscribed to the email listservs of the two primary party

9    presidential candidates, Biden and his opponent, Donald J. Trump, as well as those of 78 Senate

10   and 156 House candidates from across the political spectrum.[9]  The NCSU Study then split the

11   email accounts into different groups in order to test the effect that user actions had on the email

12   platforms' SFAs:  (1) a "Baseline Experiment" group in which the accounts never opened or read

13   any emails and did not move them to or from their spam folders or inboxes; (2) an "Interaction

14   Experiment" group in which the accounts read all emails in both the spam folder and the inbox

15   (the "Read Group"); (3) an "Interaction Experiment" group in which the accounts moved all

16   received emails in their inboxes to their spam folders (the "Spam Group"); and (4) an

17   "Interaction Experiment" group in which the accounts moved all emails in their spam folders to

---

[7]    Biden for President, Amended Statement of Organization at 1-2 (Aug. 30, 2022), https://docquery.fec.gov/pdf/867/202208309528296867/202208309528296867.pdf.

[8]    Compl. (Apr. 26, 2022); *see id.*, Ex. A (Hassan Iqbal, *et al*, Dep't of Comput. Sci., N.C. State Univ., *Left or Right:  A Peek into the Political Biases in Email Spam Filtering Algorithms During US Election 2022*, *in* WEB CONFERENCE 2022 at 2491 (Assoc. for Comput. Mach. ed. 2022) [hereinafter "NCSU Study"]).

[9]    NCSU Study at 2492-93.

1   their inboxes (the "Inbox Group").[10]  The study observed the accounts over a five-month period

2   from July 1, 2020, through November 30, 2020.[11]

3          The NCSU Study concluded that each of the three email platforms appeared to exhibit

4   "aggregate political bias" in the Baseline Experiment group:  While Outlook and Yahoo! Mail

5   leaned "towards the right" by marking a higher percentage of Democratic campaign emails as

6   spam than Republican campaign emails, the NCSU Study concluded that "Gmail leans towards

7   the left as it marks a higher percentage of [Republican] emails as spam."[12]  The NCSU Study

8   determined that, across the study period in the Baseline Experiment group, Gmail marked 67.6%

9   of emails from Republican candidates as spam compared to 8.2% of emails from Democratic

10  Candidates.[13]  Outlook, on the other hand, marked 95.8% of Democratic emails as spam, and

11  75.4% of Republican emails, while Yahoo! Mail marked 14.2% more Democratic emails spam

12  than Republican emails.[14]  The NCSU Study also noted that the disparity in Gmail's SFA

13  between Republican and Democratic emails increased over the period of the study, with the

14  percentage of Republican emails marked as spam rising and the Democratic email percentage

15  remaining largely constant.[15]

16         With respect to the three Interaction Experiment groups, the NCSU Study observed that

17  the Read Group's interactions "did not have any significant impact on the political bias of any of

---

[10]   *Id.* at 2493.

[11]   *Id.*

[12]   *Id.* at 2494.

[13]   *Id.*

[14]   *Id.*  The NCSU Study does not appear to provide the actual percentage of emails from each political party that Yahoo! Mail marked as spam.

[15]   *Id.*

the three email services."[16]  The Spam Group's interactions had a more significant effect, and Gmail's SFA's aggregate bias against Republican campaign emails "improved[] significantly": By moving all emails from the inbox to the spam folder, the Spam Group's interaction increased the percentage of Democratic emails marked as spam from 8.2% to 54.2%, and Republican emails from 67.6% to 83.9% as the NCSU study appears to reflect.[17]  Finally, the Inbox Group's interactions caused political bias in Gmail's SFA to "reduce significantly," but did not have the same effect on Yahoo! Mail's nor Outlook's:  The percentage of Republican emails marked as spam by Gmail decreased from 67.6% in the Baseline Group to 5.34% in the Inbox Group, while Democratic emails marked as spam decreased from 8.2% to 0%.  The NCSU Study concluded that the Inbox Group's interactions caused Gmail to "maintain[] its left[-]leaning [bias], but not very strongly anymore."[18]

In addressing its limitations, the NCSU Study states that several factors affected the significance of the Study's results:  First, the NCSU Study observed a limited time period, and the authors note that they "cannot make inferences about the behaviors of the SFAs in general."[19]  Second, a number of variables were outside the NCSU Study's control, including how many emails the individual campaigns sent; how long the campaigns had been active; and how many users outside of the study group had marked a specific email as spam.  Thus, the study authors conclude, they "cannot determine the extent to which these factors influence spam

---

[16]     *Id.* at 2497.

[17]     *Id.* at 2497-98.  Yahoo! Mail became "almost unbiased" as a result of the Spam Group's actions, and Outlook "did not show a significant impact on the percentage of emails marked as spam."  *Id.* at 2497.

[18]     *Id.* at 2498.  In contrast, the aggregate political bias for both Outlook and Yahoo! Mail "increased . . . because neither of the two services reacted noticeably" to the interaction of moving emails from the spam folder to the inbox.  *Id.*

[19]     *Id.*

1  percentages."[20] Finally, the authors note that their study selected for particular variables, and

2  that other variables may have other effects not shown in the NCSU Study.[21] They state that "we

3  have no reason to believe that there were deliberate attempts from these email services to create

4  these biases to influence the voters."[22]

5      **C.    The Complaint and Responses**

6      The Complaint relies on the NCSU Study to allege that Google's spam filter is biased

7  against Republican candidates such that its operation constitutes an in-kind contribution to

8  Democratic candidates and their committees, including Biden for President.[23] The Complaint

9  alleges that "Google's biased email filtering mechanism wrongly diverted untold numbers of

10 emails from Republican candidates into recipients' spam folders, thereby eliminating a major

11 source of political fundraising for Republican candidates and severely undermining their ability

12 to communicate their messages to the public."[24] Thus, it urges that the Commission find that

13 "Google has made illegal, corporate in-kind contributions to the Biden campaign and

14 Democrat[ic] candidates across the country by its overwhelmingly — and indefensibly —

15 disproportionate suppression of Republican candidate emails."[25]

16     The Responses deny the allegations. Google states that "Gmail is a commercial product,

17 and its spam filters are one of a number of features that Gmail offers to enable more than 1.5

18 billion users to be more secure and efficient in their use of the product."[26] It goes on to say that

---

[20]    *Id.*

[21]    *Id.*

[22]    *Id.*

[23]    Compl. at 5-6.

[24]    *Id.* at 2.

[25]    *Id.*

[26]    Google Resp. at 1.

its SFA "operate[s] solely for commercial purposes: to enhance Gmail users' experience by fostering a secure, safe, and effective email system, which, in turn, promotes Google's brand and financial success."[27]  Google avers that its spam filter policies "apply to all bulk senders — regardless of political affiliation and regardless of whether the sender is a political campaign or any other enterprise."[28]

Google describes that it designed its SFA to look at

> a variety of signals, including characteristics of the IP address, domains/subdomains, whether bulk senders are authenticated, and user input.  User feedback, such as when a user marks a certain email as spam or signals they want a sender's emails in their inbox, is key to this filtering process, and our filters learn from user actions.[29]

Google contends that the NCSU Study did not examine key factors that influence the action of its SFA, including sender-controlled settings that reduce the likelihood that emails are blocked by Google's SFA, whether the sender is authenticated, and how other users had flagged the emails received during the study, and thus "cannot be said to measure how the spam filters work in the vast majority of cases."[30]

Google argues that its spam filter does not result in contributions under the Act.[31]  It claims that, because its SFA is undertaken for a *bona fide* commercial purpose and not for the purpose of influencing an election, its operation does not constitute a contribution or

---

[27]   *Id.* at 2.

[28]   *Id.*

[29]   *Id.* at 5 (quoting Neil Kumaran, Grp. Prod. Manager, Gmail Sec. & Trust, *Understanding Gmail's Spam Filters*, GOOGLE BLOG (May 27, 2022), https://cloud.google.com/blog/products/workspace/an-overview-of-gmails-spam-filters).

[30]   *Id.* at 4-5.

[31]   *Id.* at 6.

1  contributions under the Act.[32]  To support this argument, it asserts that the SFA incorporates

2  "objective criteria" that is "neutral to the political affiliation of a sender and reflects user

3  preferences,"[33] and states that "Google also provides guidance to senders on how to minimize

4  having the emails they send filtered out of Gmail users' inboxes in various resources."[34]

5      Google further argues that the Complaint is vague, speculative, and draws unwarranted

6  legal conclusions,[35] both because it relies on a single study without any other evidence and

7  because that study is flawed and does not support the claims made in the Complaint.[36]  It

8  contends that the NCSU Study was small, analyzing only 34 recipient email addresses when

9  Gmail has 1.5 billion users, and over "a mere 153 days, 27 of which were post-election."[37]

10 Google argues that the number of accounts analyzing user interactions was even smaller and, as

11 such, is even less indicative of broader trends:  only four Gmail accounts were included in each

12 of the Read, Spam, and Inbox Groups.[38]  Google also asserts that the NCSU Study was not

13 comparing "apples[ ]to[ ]apples," as the emails sent by Republican and Democratic campaigns

14 were not identical, and that there are multiple factors that impact the action of Google's SFA that

15 were outside the authors' control.[39]

---

[32]   *Id.* at 7-11.

[33]   *Id.* at 10.

[34]   *Id.* (citing *Prevent Mail to Gmail Users from Being Blocked or Sent to Spam*, GMAIL HELP, https://support.google.com/mail/answer/81126?hl=en (last visited Nov. 30, 2022); POSTMASTER TOOLS BY GMAIL, https://gmail.com/postmaster/ (last visited Nov. 30, 2022); *Best Practices:  Send Emails to Gmail Users*, GOOGLE TRAINING CTR, https://civicsresources.withgoogle.com/training-center/amplify/lesson-7/?_sm_au_=isVknNWPs9V1nRWNB2RNkKQT82pFc (last visited Nov. 30, 2022)).

[35]   *Id.* at 11-14.

[36]   *Id.*

[37]   *Id.* at 13.

[38]   *Id.*

[39]   *Id.*

Biden for President submits that the Complaint "states no facts, and indeed makes no allegations, that Biden for President took any action that would constitute a violation of federal campaign finance law."[40]  It states that the Commission has "resolved the legal theory advanced here in numerous matters since the 2020 election" and that "[t]his pleading brings no new facts or legal arguments to the questions raised and answered in these earlier cases."[41]

## II.   LEGAL ANALYSIS

The Act prohibits corporations from making contributions to federal candidates, and likewise bars candidates, political committees (other than independent expenditure-only political committees and committees with hybrid accounts), and other persons from knowingly accepting or receiving corporate contributions.[42]

Under the Act, a "contribution" includes "any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office."[43]  The term "anything of value" includes "all in-kind contributions."[44]  The Commission has concluded that a commercial vendor providing services to political committees will not make a contribution for the purpose of influencing an election when its business activity "reflects commercial considerations and does not reflect considerations outside of a business relationship."[45]  A commercial vendor need not make its services available to committees

---

[40] Biden for President Resp. at 1 (May 17, 2022).

[41] *Id.* at 2 (citing MURs 7870 (Google LLC, *et al.*); MURs 7812, 7825, 7869 (Facebook, Inc., *et al.*); MURs 7821, 7827, 7868 (Twitter, Inc., *et al.*); MUR 7858 (Facebook, Inc.); MUR 7841 (Twitter, Inc., *et al.*); MUR 7834 (Facebook, *et al.*); MUR 7832 (Twitter, Inc.); MUR 7829 (Twitter, Inc.); MUR 7742 (Twitter, Inc.); MUR 7687 (Twitter, Inc.); MUR 7641 (Facebook, Inc.); MURs 7443, 7447, 7550 (Twitter, Inc.)).

[42] 52 U.S.C. § 30118(a); *accord* 11 C.F.R. § 114.2(a), (d).

[43] 52 U.S.C. § 30101(8)(A); *accord* 11 C.F.R. § 100.52.

[44] 11 C.F.R. § 100.52(d).

[45] Advisory Opinion ("AO") 2012-31 at 4 (AT&T).

representing all political ideologies, but rather may establish objective business criteria to protect the commercial viability of its business without making contributions to the committees that meet those criteria.[46]

The Commission has long considered activity engaged in for *bona fide* commercial reasons not to be "for the purpose of influencing an election," and thus, not a contribution or expenditure under 52 U.S.C. § 30118(a).[47] This is true even if a candidate benefitted from the commercial activity.[48]

The Commission has decided a number of matters involving online communication platforms and the issue of whether particular conduct constituted commercial activity or contributions made for an electoral purpose. For example, in MURs 7821, 7827, 7868 (Twitter, Inc., *et al.*), the Commission found no reason to believe that Twitter had made a prohibited in-

---

[46] AO 2017-06 at 6 (Stein & Gottlieb) ("[A] commercial vendor, providing services to political committees . . . need not make its services available to committees representing all political ideologies, but rather may establish objective business criteria to protect the commercial viability of its business without making contributions to the committees that meet those criteria."); AO 2004-06 at 1 (Meetup) (explaining that a corporation may provide goods and services to political committees without being considered to have made an in-kind contribution so long as it does so "on the same terms and conditions available to all similarly situated persons in the general public"); AO 2012-26 at 10 (Cooper for Congress, *et al.*) (concluding that no contribution to committee resulted where its participation in a text message fundraising program was subject to "objective and . . . commercially reasonable" criteria).

[47] *See, e.g.*, Factual & Legal Analysis ("F&LA") at 4, MUR 6586 (World Wrestling Ent., Inc.) (finding that WWE acted with the "sole intent to defend its business reputation" and not for the purpose of influencing an election when WWE's senior vice president sent a letter to a newspaper seeking a retraction of a negative article about Senate candidate Linda McMahon, who owned and served as CEO of WWE); First Gen. Counsel's Rpt. ("FGCR") at 13 & Cert. ¶ 1 (June 7, 2005), MUR 5474 (Dog Eat Dog Films, *et al.*) (approving no reason to believe recommendation) (determining that distributors and marketers of *Fahrenheit 9/11* film did so "in connection with *bona fide* commercial activity and not for the purpose of influencing an election"); AO 2018-11 at 4 (Microsoft Corp.) (concluding that commercially reasonable efforts "to protect [Microsoft's] brand reputation" by providing election-sensitive customers with free account security services are not in-kind contributions).

[48] *See* FGCR at 16 & Cert. ¶ 5 (June 6, 1994), MUR 3622 (The Clinton/Gore '92 Committee) (approving no reason to believe recommendation) ("[T]he fact that any of these candidates . . . may have received an indirect benefit (dissemination of their political positions) as a result of the sale of these tapes does not convert commercial activity into a corporate contribution."); F&LA at 6, MUR 7024 (Van Hollen for Senate, *et al.*) (opining that the "question under the Act is whether the legal services were provided for the purpose of influencing a federal election, not whether they provided a benefit to Van Hollen's campaign," and concluding there was no contribution given the "absence of any objective or subjective indication" respondents acted for the purpose of influencing the election).

1   kind contribution by engaging in a number of content moderation activities, including placing a

2   label on certain Tweets alleging election fraud and misrepresenting the results of the 2020

3   election, as well as blocking users from sharing information derived from materials believed at

4   the time to have been stolen, because those actions were undertaken by Twitter for a commercial

5   purpose, even though they may have benefited Biden for President.[49]  Similarly, in MUR 7834,

6   (Facebook, Inc., *et al.*), the Commission found no reason to believe an illegal in-kind

7   contribution had occurred where, *inter alia*, Google, Facebook, and Twitter had removed and

8   deprioritized communications on their platforms that violated the companies' commercially

9   motivated content policies.[50]  And in MURs 7443, 7447, 7550 (Twitter, Inc.), the Commission

10  found that no contribution or independent expenditure had occurred where Twitter had, among

11  other things, banned a user from its platform for violating its policies about hate speech for a

12  commercial, rather than electoral, reason.[51]

13         Here, the available information indicates that Google's spam filter is in place for

14  commercial, rather than electoral, purposes.  Even presuming that the NCSU Study is both

15  sufficiently rigorous and well-designed to establish that the spam filter has a disparate impact on

16  Republican and Democratic candidate emails, the fact that a service or action benefits a

---

[49]   F&LA at 13-19, 21 MURs 7821, 7827, 7868 (Twitter, Inc., *et al.*) ("As discussed above, the information before the Commission indicates that Twitter's actions . . . were undertaken for commercial reasons and not for the purpose of influencing an election.  Consequently, because Twitter's actions reflect a commercial, rather than electoral, purpose, they were not contributions.").

[50]   F&LA at 10-14, 16, MUR 7834 (Facebook, Inc., *et al.*) ("Because the available information indicates that Respondents' conduct was motivated by *bona fide* commercial reasons and was not coordinated with Respondents, the Commission finds no reason to believe that the Respondents made in-kind corporate contributions in violation 52 U.S.C. § 30118(a).").

[51]   F&LA at 9-12, MURs 7443, 7447, 7550 (Twitter, Inc.) ("Twitter's action that Complainants allege was a contribution or independent expenditure was part of an effort to 'preemptively detect and reduce the reach of' content that Twitter believes negatively affects its brand and ability to attract advertisers.  Thus, the actions taken by Twitter appear to reflect commercial considerations, rather than an effort to influence a federal election.").

candidate is not dispositive of whether a contribution results, so long as the purpose for that service or action is a *bona fide* commercial reason rather than for the purpose of influencing a federal election. As Google has stated in its public filings, its brand is "negatively affected" by "reputational issues, third-party content shared on [its] platforms, . . . and product or technical performance failures."[52] Spam emails, which it contends constituted nearly half of all emails sent in 2021, may contain malware, phishing attacks, and scams designed to exploit and extort users;[53] and Google has stated in its public blog that "a big part of Gmail's draw is its built-in security protections" designed to subvert these threats.[54] Though Google's Response does not explain with any specificity why the NCSU Study appears to reveal a disparate impact in how Republican and Democratic campaign emails are affected by Gmail's SFA, the Response supports Google's contention that the spam filter is applied to enhance the value of the Gmail product, and that it is not implemented to influence any election for federal office.[55] In sum,

---

[52] Alphabet 2021 10-K at 12.

[53] Tatyana Kulikova & Tatyana Shcherbakova, *Spam and Phishing in 2021*, SECURELIST BY KASPERSKY (Feb. 9, 2021), https://securelist.com/spam-and-phishing-in-2021/105713/ (cited in Google Resp. at 4 n.24) (stating that Google's spam filter blocked 148.17 million malware attachments and 253.37 million phishing links in 2021, and outlining the most common email scams of that year).

[54] Neil Kumaran, Grp. Prod. Manager, Gmail Sec. & Trust, *Spam Does Not Bring Just Joy — Ridding Gmail of 100 Million More Spam Messages with TensorFlow*, GOOGLE BLOG (Feb. 6, 2019), https://cloud.google.com/blog/products/g-suite/ridding-gmail-of-100-million-more-spam-messages-with-tensorflow (cited in Google Resp. at 4 n.22).

[55] Google Resp. at 9 ("Contrary to Complainant's assertions, Google's spam filters are not designed to have any electoral purpose; their use is driven by commercial considerations.").

1   Google has credibly supported its claim that its spam filter is in place for commercial reasons

2   and thus did not constitute a contribution within the meaning of the Act.[56]

3         Further, the NCSU Study does not make any findings as to the reasons why Google's

4   spam filter appears to treat Republican and Democratic campaign emails differently.  Though the

5   NCSU Study appears to demonstrate a disparate impact from Google's spam filter, it explicitly

6   states that its authors have "no reason to believe that there were deliberate attempts from these

7   email services to create these biases to influence the voters."[57]  As discussed above, a

8   contribution must be made for the purpose of influencing an election for federal office.[58]  As

9   Google's Response states, Muhammad Shahzad, "a lead author of the Study[,] has since publicly

10  stated that those who claim the Study demonstrates political bias are mischaracterizing it."[59]

11  Without more, the NCSU Study suggests only a correlation between the political affiliation of

12  particular campaign emails and the likelihood of being flagged by Google's SFA; it does not

---

[56]      On August 11, 2022, subsequent to the filing of the Complaint and Responses in this matter, the Commission approved an advisory opinion to Google.  Google had asked whether it could engage in a pilot program under which emails sent by "authorized candidate committees, political party committees, and leadership political action committees" registered with the Commission and that meet certain security criteria would not initially be subject to Google's usual spam filter.  AO Request, AO 2022-14 (Google LLC) ("AO 2022-14").  Whereas this Report concerns Google's prior activity, the approved proposed program set forth in the Advisory Opinion request will post-date and concern different activity than that which is the subject of the Complaint.  In approving the Advisory Opinion Request, the Commission concluded that Google was proposing to modify its service for "commercial, as opposed to political, reasons," and that "the modifications . . . would serve Google's commercial interests in protecting its brand reputation and obtaining valuable data on how to enhance its product."  AO 2022-14 at 7-8.  The Commission's determination that Google's proposed pilot program modification of its spam filter was for commercial purposes supports the conclusion that the spam filtering service is, itself, also provided for commercial purposes.

[57]      NCSU Study at 2498.

[58]      52 U.S.C. § 30101(8)(A); *accord* 11 C.F.R. § 100.52.

[59]      Google Resp. at 12.  Shahzad told *The Washington Post*, "Gmail isn't biased like the way it's being portrayed. . . .  I'm not advocating for Gmail or anything.  I'm just stating that when we take the observation out of a study, you should take all of the observations, not just cherry-pick a few and then try to use them."  Cristiano Lima, *Republicans Seized on a Study as Proof of Google's Bias.  Its Authors Say It's Being Misrepresented.*, WASH. POST (May 25, 2022), https://www.washingtonpost.com/politics/2022/05/25/republicans-seized-study-proof-googles-bias-its-authors-say-it-being-misrepresented/ (cited in Google Resp. at 1 n.3, 12 n.56).

1    establish evidence "at least sufficient to warrant conducting an investigation" indicating that

2    Google's SFA is implemented with the purpose of influencing a federal election, thereby

3    effectuating one or more political contributions under the Act.[60]

4       Accordingly, the Commission finds no reason to believe that Google, LLC, made, and

5    Biden for President and Keana Spencer in her official capacity as treasurer knowingly accepted,

6    prohibited in-kind corporate contributions in violation of 52 U.S.C. § 30118(a) and 11 C.F.R.

7    §§ 109.21, 114.2.

---

[60]  Statement of Policy Regarding Commission Action in Matters at the Initial Stage in the Enforcement Process, 72 Fed. Reg. 12,545, 12,545 (Mar. 16, 2007).