**PERKINS COIE LLP**

Abdul Kallon (*pro hac vice*)
AKallon@perkinscoie.com
Ryan Spear (*pro hac vice*)
RSpear@perkinscoie.com
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile:  206.359.9000

Sunita Bali, Bar No. 274108
SBali@perkinscoie.com
Danielle Sivalingam, Bar No. 294369
DSivalingam@perkinscoie.com
Angie Young Kim, Bar No. 270503
AngieKim@perkinscoie.com
505 Howard Street, Suite 1000
San Francisco, CA 94105
Telephone: 415.344.7000
Facsimile:  415.344.7050

Michael R. Huston (*pro hac vice*)
MHuston@perkinscoie.com
700 13th St NW
Washington, DC 20005
Telephone: 202.654.6200
Facsimile: 202.654.621

*Attorneys for Defendant Google LLC*
*(erroneously sued as Google Inc.)*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

REPUBLICAN NATIONAL COMMITTEE,

Plaintiff,

v.

GOOGLE INC.,

Defendant.

Case No. 2:22-cv-01904-TLN-JDP

**REPLY IN SUPPORT OF MOTION TO DISMISS REPUBLICAN NATIONAL COMMITTEE'S VERIFIED COMPLAINT**

Date:       April 20, 2023
Time:       2:00 p.m.
Dept.:      Courtroom 2, 15th Floor
Judge:      Hon. Troy L. Nunley

# TABLE OF CONTENTS

Page

I.      INTRODUCTION .................................................................................................. 1

II.     ARGUMENT ........................................................................................................ 1

        A.      The RNC Cannot State a Claim Under California's Common-Carrier Law ........ 2

                1.      Even if Gmail is a common carrier, the RNC's claim fails. ...................... 2

                2.      Gmail is not a common carrier. ................................................................ 4

        B.      The RNC Cannot State a Claim Under the Unruh Act ........................................ 6

                1.      The RNC does not plausibly allege that Google intentionally
                        discriminated against the RNC, dooming its Unruh Act claim................... 6

                2.      "Political affiliation" is not a protected class. ........................................... 6

        C.      The RNC Cannot State a Claim Under the Unfair Competition Law
                ("UCL") ................................................................................................................ 8

        D.      The RNC Fails to Plead Any Elements of Intentional Interference with
                Prospective Economic Relations .......................................................................... 9

        E.      The RNC Cannot State a Claim for Negligent Interference with Prospective
                Economic Relations ............................................................................................ 10

        F.      Google Is Immune from the RNC's Claims under Section 230.......................... 11

                1.      Section 230(c)(2)(B) bars the RNC's claims. ......................................... 11

                2.      Section 230(c)(2)(A) bars the RNC's claims. ......................................... 13

                3.      Section 230(c)(2) bars claims for prospective injunctive relief. ............. 14

                4.      Section 230(c)(1) bars the RNC's claims................................................ 14

III.    CONCLUSION ................................................................................................... 15

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

CASES

4

*Ardente, Inc. v. Shanley*,

5

    No. 07-CV-4479, 2010 WL 546485 (N.D. Cal. Feb. 10, 2010) ............................................. 3

6

*Ashcroft v. Iqbal*,

    556 U.S. 662 (2009) ......................................................................................................................... 1

7

*Bell Atl. Corp. v. Twombly*,

8

    550 U.S. 544 (2007) ......................................................................................................................... 8

9

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,

10

    11 Cal. 4th 376 (1995) .................................................................................................................... 9

11

*Divino Grp. LLC v. Google LLC*,

    No. 19-cv-04749, 2022 WL 4625076 (N.D. Cal. Sept. 30, 2022) ................................... 13, 15

12

*Divino Grp. LLC v. Google LLC*,

13

    No. 19-cv-04749, 2023 WL 218966 (N.D. Cal. Jan. 17, 2023)............................................... 15

14

*Doe v. Uber Techs., Inc.*,

15

    184 F. Supp. 3d 774 (N.D. Cal. 2016) ...................................................................................... 5

16

*Doe v. Uber Techs., Inc.*,

    No. 19-cv-03310, 2019 WL 6251189 (N.D. Cal. Nov. 22, 2019) ........................................... 5

17

*Dyroff v. Ultimate Software Grp., Inc.*,

18

    934 F.3d 1093 (9th Cir. 2019)..................................................................................................... 14

19

*e360Insight, LLC v. Comcast Corp.*,

20

    546 F. Supp. 2d 605 (N.D. Ill. 2008) ................................................................................. 12, 14

21

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*,

    946 F.3d 1040 (9th Cir. 2019)............................................................................................. 11, 12

22

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,

23

    521 F.3d 1157 (9th Cir. 2008)............................................................................................. 12, 15

24

*FCC v. Midwest Video Corp.*,

25

    440 U.S. 689 (1979)......................................................................................................................... 5

26

*Fernandes v. TW Telecom Holdings, Inc.*,

    No. 15-cv-01976, 2016 WL 704723 (E.D. Cal. Feb. 23, 2016) ............................................... 9

27

*Force v. Facebook, Inc.*,

28

    934 F.3d 53 (2d Cir. 2019)........................................................................................................... 14

1

**TABLE OF AUTHORITIES (continued)**

2

**Page(s)**

3

*Gayer v. Polk Gulch, Inc.*,

4
231 Cal. App. 3d 515 (1991) ....................................................................... 7

5

*Greater L.A. Agency on Deafness, Inc. v. CNN*,
742 F.3d 414 (9th Cir. 2014) ...................................................................... 6

6

*Harris v. Cap. Growth Invs. XIV*,

7
52 Cal. 3d 1142 (1991) .............................................................................. 7

8

*Harris v. LSP Prods. Grp., Inc.*,

9
No. 18-cv-02973, 2021 WL 2682045 (E.D. Cal. June 30, 2021) ........................... 8

10

*Henderson v. Source for Public Data, L.P.*,
53 F.4th 110 (4th Cir. 2022) .................................................................... 15

11

*Hessians Motorcycle Club v. J.C. Flanagans*,

12
86 Cal. App. 4th 833 (2001) ....................................................................... 6

13

*Holomaxx Techs. v. Microsoft Corp.*,

14
783 F. Supp. 2d 1097 (N.D. Cal. 2011) ............................................... 12, 14

15

*Huang v. Bicycle Casino, Inc.*,
4 Cal. App. 5th 329 (2016) ......................................................................... 5

16

*Huber v. Biden*,

17
No. 21-cv-06580, 2022 WL 827248 (N.D. Cal. Mar. 18, 2022) ....................... 7

18

*Jones v. Dirty World Ent. Recordings LLC*,

19
755 F.3d 398 (6th Cir. 2014) ..................................................................... 14

20

*Koebke v. Bernardo Heights Country Club*,
36 Cal. 4th 824 (2005) ............................................................................... 7

21

*Langdon v. Google, Inc.*,

22
474 F. Supp. 2d 622 (D. Del. 2007) ......................................................... 14

23

*Marcus v. Apple, Inc.*,
No. 14-03824, 2015 WL 151489 (N.D. Cal. Jan. 8, 2015) ............................ 8

24

*Martinez v. Cot'n Wash, Inc.*,

25
81 Cal. App. 5th 1026 (2022) ..................................................................... 6

26

*NetChoice, LLC v. Att'y Gen.*,

27
34 F.4th 1196 (11th Cir. 2022) ................................................................... 5

28

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Orr v. Pac. Sw. Airlines*,
  208 Cal. App. 3d 1467 (1989) ........................................................................ 2

*Prager Univ. v. Google LLC*,
  No. 19CV340667, 2019 WL 8640569 (Cal. Super. Nov. 19, 2019) .................... 13

*Riggs v. MySpace, Inc.*,
  444 F. App'x 986 (9th Cir. 2011) .................................................................. 14

*Sandoval v. Cal-W. Reconveyance Corp.*,
  No. 13-CV-00114, 2013 WL 12128818 (C.D. Cal. June 4, 2013) ..................... 9

*Sikhs for Just. "SFJ," Inc. v. Facebook, Inc.*,
  144 F. Supp. 3d 1088 (N.D. Cal. 2015) ......................................................... 15

*Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*,
  521 F. Supp. 3d 929 (S.D. Cal. 2021) ....................................................... 9, 10

*Squaw Valley Ski Corp. v. Superior Ct.*,
  2 Cal. App. 4th 1499 (1992) ....................................................................... 4, 5

*Sybersound Recs., Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2008) .................................................................... 10

*United States v. Councilman*,
  418 F.3d 67 (1st Cir. 2005) (en banc) ............................................................ 4

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
  42 Cal. App. 4th 507 (1996) ......................................................................... 9

*Zango, Inc. v. Kaspersky Lab, Inc.*,
  568 F.3d 1169 (9th Cir. 2009) ............................................................... 11, 13

*Zeran v. Am. Online, Inc.*,
  129 F.3d 327 (4th Cir. 1997) ...................................................................... 15

**STATUTES**

15 U.S.C. § 7701(a) .......................................................................................... 8

47 U.S.C. § 230(c)(2)(A), (B) .................................................................... 13, 14

Cal. Bus. & Prof. Code § 17529 ......................................................................... 8

Cal. Civ. Code §2162 ....................................................................................... 3

Cal. Civ. Code § 2168 ................................................................................. 2, 4

REPLY ISO MOTION TO DISMISS REPUBLICAN NATIONAL COMMITTEE'S VERIFIED COMPLAINT

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

Cal. Civ. Code § 2208 ........................................................................................................ 6

Title II of the Civil Rights Act, 42 U.S.C. § 2000a *et seq.* ........................................... 7

**OTHER AUTHORITIES**

Adam Candeub & Eugene Volokh, *Interpreting 47 U.S.C. S 230(c)(2)*, 1 J. Free
   Speech L. 175, 189 (2021) ..................................................................................... 12

*State Public Accommodation Laws*, Nat'l Conf. of State Legislatures (June 25,
   2021), https://www.ncsl.org/civil-and-criminal-justice/state-public-
   accommodation-laws ............................................................................................... 7

## I.     INTRODUCTION

The RNC complains that Google incorrectly determined that some messages sent by the RNC were spam. True or not, there is no legal basis for an email sender (the RNC) to sue the provider of an email service (Google) just because some of the sender's emails were sorted into users' spam folders. Thus, not surprisingly, the RNC urges this Court to adopt bizarre interpretations of the law that no other court has adopted, and to read facts into its Complaint that simply are not there. The Court should grant Google's motion to dismiss.

## II.    ARGUMENT

Every claim in the Complaint requires the RNC to plausibly plead its core theory: During the last few days of a few months, and for no apparent reason, Google engaged in political affiliation or viewpoint discrimination by intentionally sending most of the RNC's emails to users' spam folders. But that theory is utterly implausible for reasons that are apparent from the Complaint. And that implausibility dooms every count.

**First,** the RNC cannot explain why Google would sort the RNC's emails into spam folders for only a few days at the end of each month—but not at any other time—if Google meant to discriminate. The RNC argues that the end of the month "is historically when the RNC's fundraising is most successful." Opp. 17. But the RNC does not allege that Google knew that.

**Second,** the RNC offers no credible explanation for why, if Google meant to discriminate against the RNC, Google spent 10 months repeatedly trying to resolve the alleged inboxing issue and even provided the RNC with "suggestions" that had a "significantly positive impact." Compl. ¶ 48, Dkt. 1. The RNC's only retort is that it is no "defense" that Google "could've discriminated more often and more invidiously." Opp. 18. But the present question is whether the RNC has *plausibly* alleged *any* discrimination, and the answer is "no."

**Third,** the Complaint admits that Google gave the RNC at least *six* explanations for the alleged fluctuations in the RNC's inboxing rate, all based on ordinary aspects of bulk email management and spam filtering technology. *See* Mot. 7, Dkt. 30. Those "obvious alternative explanation[s]" for the alleged drop in the RNC's inboxing rate render the RNC's speculative theory of discrimination even more implausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009).

**Fourth,** the RNC's own A/B test powerfully supports Google, because it proves that whether an email was sorted to a user's inbox or spam folder *did not* depend on whether it was "the RNC [that] is sending the email." Opp. 18. Both versions of the emails in the A/B test were sent by the RNC. The only difference was that they included hyperlinks to different variants of an external RNC webpage. *See* Compl. ¶ 33. The only reasonable inference to be drawn from those allegations is that the hyperlinks themselves determined whether certain emails were treated as spam—*not* the RNC's "political affiliation." *Contra* Opp. 17.

**Fifth,** the North Carolina State University Study relied upon by the RNC does not show intentional discrimination. Critically, one of the researchers responsible for the study has since refuted claims that it reveals the sort of political bias alleged by the RNC. *See* Mot. 9. And that study *did not even address* repeated end-of-month drops in inboxing rates, as alleged here. Thus, the study adds nothing to the (im)plausibility of the RNC's claims.

### A.    The RNC Cannot State a Claim Under California's Common-Carrier Law[1]

#### 1.    Even if Gmail is a common carrier, the RNC's claim fails.

Even if Gmail qualifies as a common carrier under California law—and it does not, *see infra* at 4-6—the RNC's claim still fails.

**First,** common carriers owe duties only to *customers*—those to whom they "offer[ ] to … carry." Cal. Civ. Code § 2168; *see Orr v. Pac. Sw. Airlines*, 208 Cal. App. 3d 1467, 1472 (1989) (explaining that "[c]ommon carriers owe *their passengers* a duty," and the carrier-passenger "relationship" arises only "when one offers to become a passenger, and is accepted as a passenger") (emphasis added). But the RNC does not allege that it has a customer relationship with Google. In response, the RNC argues that "it doesn't matter that [it] is a non-Gmail user" because "Google's offer to carry messages extends beyond those who have Gmail accounts." Opp. 7. The RNC cites no authority for that limitless interpretation of common-carrier duties, however, and its Complaint conspicuously does not allege that Google "offer[ed] to carry [the

---

[1] The RNC admits that Count VI, based on federal common-carrier law, must be dismissed. Opp. 4 n.3. And the RNC addresses its negligence claim (Count VII) only in connection with its common-carrier claim (Opp. 9), so that claim should be dismissed for the same reasons as its common-carrier claim.

RNC's] messages." Nor does the RNC allege that Google offers to carry indiscriminately any message that any person or entity (including the RNC) wishes to send to a Gmail user. To the contrary, the RNC cites Google's Terms, *see* Compl. 6 n.2, which state that Google "use[s] artificial intelligence and machine learning to … better *detect and block spam and malware*." Bali Decl., Ex. K, Dkt. 30-12 (emphasis added).

**Second,** California's common-carrier law does not address the type of "viewpoint" discrimination alleged by the RNC. *See* Mot. 12 n.5. The RNC "fails to respond to this argument and therefore concedes it through silence." *Ardente, Inc. v. Shanley*, No. 07-CV-4479, 2010 WL 546485, at *6 (N.D. Cal. Feb. 10, 2010).

**Third,** the RNC argues that Google "effectively" refused or postponed its emails by sorting them into users' spam folders. Opp. 11. But the RNC cites no authority for that counterintuitive proposition. As all email users know, "spam" folders are no less accessible to users than "inbox" folders; both are a click away within the same user interface. Thus, even according to the RNC's cherry-picked definition of "postpone," Opp. 11, Google did not even arguably "defer to a future or later time" or "delay" any messages.[2]

The RNC responds that the scope of a carrier's obligations depends on "*what is offered*," and here Google supposedly "offers to place all emails properly received to the user's inbox." Opp. 11. But again, that argument is refuted by the Complaint, which acknowledges Gmail's spam filters and does *not* allege that Google offered to deliver *all* emails to users' inboxes.

**Fourth,** the RNC's reliance on Sections 2161 and 2162 of California's common-carrier law (Opp. 9) is misplaced. Section 2162 says that a carrier must exercise "great care and diligence" in discharging its duties, and Section 2161 says those duties include "deliver[ing] [messages] at the place to which they are addressed, or to the person for whom they are

---

[2] Nor did Google do anything remotely like abandoning goods "on the bank of a river," as suggested by the RNC's citation to an 1881 case involving a wayward delivery of grain. Opp. 9. In support of that tortured analogy, the RNC contends that "Google does not notify users that the email is in the spam folder; nor do users regularly (if ever) check the spam folder, particularly without prompting." Opp. 11. Crucially, however, *the RNC's Complaint alleges none of those purported facts*. Plus, they are untrue. Google's Terms make clear that emails may be sorted into users' spam folders, and the Gmail interface informs users when messages are sorted into their spam folders. *See* Bali Decl., Ex. M, Dkt. 30-14.

intended." But email messages are not "addressed" to *inboxes*; they are addressed to users' *accounts*—which include spam folders. So, even if Google owed the RNC any duties, it complied with those duties by timely ensuring all the RNC's messages were made accessible at "the place[s] to which they [were] addressed" (*i.e.*, users' accounts) and by "the person[s] for whom they [were] intended" (*i.e.*, Gmail users).

### 2. Gmail is not a common carrier.

The RNC's common-carrier claim fails for the additional reason that Gmail has none of the attributes of a common carrier. That is not a remarkable conclusion. As the RNC admits, no court has ever applied California's common-carrier law to email applications, let alone Gmail.

**First,** a common carrier "carr[ies] persons, property, or messages." Cal. Civ. Code § 2168. But emails sent by the RNC to Gmail users are not "carried" *by Gmail*. Rather, those emails are transported *via the Internet* from the RNC to Gmail users, where they may be accessed via the Gmail application. *See United States v. Councilman*, 418 F.3d 67, 69-70 (1st Cir. 2005) (en banc) (explaining how an email "journey[s] from sender to recipient" via "a network of interconnected computers," after which it may be accessed "in an e-mail client program").

The RNC does not dispute that fundamental fact about how the Internet works. Instead it argues that Google can still be held liable for "mis-delivery" of an email message *after* it is transported via the Internet. Opp. 7. That argument has no support in common-carrier law. The RNC's claim is like the sender of a letter complaining that, after a postal service carried the letter to a corporate mailroom, the mailroom put it in the wrong mailbox. A corporate mailroom is not a common carrier, and likewise neither is Google. The RNC tries to gloss over that fatal flaw with rhetoric, arguing that "[t]he statutory language centers on what Google '*offers*,' not what Google as a matter of technological complexity itself '*does*.'" Opp. 6. But the RNC does not and could not allege that Gmail "offers" to send emails on behalf of third-party bulk senders. Nor could the RNC allege that Gmail "offers" to make accessible in users' inboxes all emails sent by any entity (including the RNC) even if those emails trigger Gmail's spam filters—because it does not.

**Second,** Gmail is not provided to the public "generally and indifferently," as it must be to qualify as a common carrier. *Squaw Valley Ski Corp. v. Superior Ct.*, 2 Cal. App. 4th 1499, 1508

-4-

1  (1992). Instead, Gmail is provided only to *Gmail users*, all of whom must agree to and abide by

2  Google's Terms. *See* Compl. ¶ 8. Gmail thus does not hold itself out "generally and indifferently"

3  even to its users, much less to third-party senders like the RNC. *See NetChoice, LLC v. Att'y*

4  *Gen.*, 34 F.4th 1196, 1220-21 (11th Cir. 2022).[3]

5         The RNC argues that Google's Terms are irrelevant and all that matters is that Gmail

6  "permit[s] any adult to … transmit expression after agreeing to the same boilerplate terms of

7  service." Opp. 5 (quoting *NetChoice, LLC v. Paxton*, 49 F.4th 439, 474 (5th Cir. 2022) (Oldham,

8  J.) (cleaned up), *petition for cert. docketed*, No. 22-555 (Dec. 19, 2022)). But as the RNC's

9  Complaint makes clear, Gmail does not give Gmail users—much less third-party senders like the

10  RNC—complete control over how emails are made accessible in Gmail. Rather, to protect users,

11  Gmail makes "individualized decisions" as to "whether and on what terms" to make emails

12  accessible, including by sorting some emails into spam folders and blocking others entirely. *FCC*

13  *v. Midwest Video Corp.*, 440 U.S. 689, 701 (1979) (cleaned up). And even the RNC seems to

14  concede that, when entities exercise that sort of case-by-case discretion as to "whether and on

15  what terms to deal," *id.*, they are not common carriers. Opp. 6 n.4.

16         **Third,** even if Google "carries" the RNC's emails, it does not do so "for profit." *Squaw*

17  *Valley*, 2 Cal. App. 4th at 1508. The RNC claims that Google realizes "indirect profit[s]" from

18  Gmail users' data. Opp. 8. But the RNC's authorities in support of that argument are cases stating

19  that the "reward" required by California's common-carrier law "may be the profit generated

20  indirectly by easing customers' way through the carriers' premises," such as when casinos

21  provide shuttles to customers. *Huang v. Bicycle Casino, Inc.*, 4 Cal. App. 5th 329, 339 (2016).

22  Those cases are a far cry from this one, including because they involve fringe-benefit services

23  (which are not at issue here) for customers (not third-party senders like the RNC).

24  ───────────────

25  [3] The RNC cites two cases involving the rideshare application Uber to argue that "terms of service" like
    Google's Terms do not "negate common-carrier status under California law." Opp. 5. Those cases are

26  irrelevant for three reasons. First, services used to carry passengers from place to place are, for obvious
    reasons, not analogous to email applications. *See supra* at 4. Second, one of the cited cases did not address

27  the arguments raised here. *See Doe v. Uber Techs., Inc.*, 184 F. Supp. 3d 774, 786-87 (N.D. Cal. 2016).
    And, third, the other case ultimately held that Uber was *not* acting as a common carrier. *See Doe v. Uber*

28  *Techs., Inc.*, No. 19-cv-03310, 2019 WL 6251189, at *8 (N.D. Cal. Nov. 22, 2019).

**Fourth,** adopting the RNC's view would inevitably lead to absurd and unworkable results. The RNC's approach would cause email providers to risk liability from sorting *any* emails into spam folders, threatening to harm consumers by deluging their inboxes with malware, pornography, and unwanted solicitations. What is more, if Gmail were treated as a common carrier, then it would have to "always give priority" to "messages from agents of the United States or of this State." Cal. Civ. Code § 2208. That would be impossible, including because Google could not possibly identify all messages by governmental actors. The RNC tries to dodge that issue by asserting, without support, that Google could simply ensure all "accounts with a .gov extension are not downgraded to spam folders." Opp. 11. But as the RNC notes, not all governmental emails are sent from addresses with a .gov extension. *See id.* And of course, even emails sent from a .gov extension (or similar extension) could contain malware.

**B.     The RNC Cannot State a Claim Under the Unruh Act**

> **1.     The RNC does not plausibly allege that Google intentionally discriminated against the RNC, dooming its Unruh Act claim.**

"To establish a violation of the Unruh Act a plaintiff must plead intentional discrimination." *Greater L.A. Agency on Deafness, Inc. v. CNN*, 742 F.3d 414, 425 (9th Cir. 2014) (cleaned up). The Opposition does not point to a single fact to support such a theory. Instead, the RNC pegs its claim on tenuous "inferences" from Google's alleged pattern of conduct." Opp. 16. But "[t]he discriminatory effect of a facially neutral policy or action is not alone a basis for inferring intentional discrimination under the Unruh Act." *Martinez v. Cot'n Wash, Inc.*, 81 Cal. App. 5th 1026, 1032 (2022). And as explained above, the only plausible reading of the alleged facts is that Google *did not* intentionally discriminate. *See supra* at 1-2.

> **2.     "Political affiliation" is not a protected class.**

No court has interpreted the Unruh Act to cover political discrimination, and the only courts to have considered the question have held that the Act *does not* reach that far. *See* Mot. 14. Further, the California Supreme Court has "cautioned against extending the Act's reach any further." *Hessians Motorcycle Club v. J.C. Flanagans*, 86 Cal. App. 4th 833, 836 (2001) (citing *Harris v. Cap. Growth Invs. XIV*, 52 Cal. 3d 1142, 1155, 1159-69 (1991), *superseded on other*

*grounds by statute*, Unruh Civil Rights Act, codified as amended at Cal. Civ. Code § 51). Thus, since *Harris*, many courts have refused to extend the Act to new classifications. *See, e.g.*, *Huber v. Biden*, No. 21-cv-06580, 2022 WL 827248, at *10 (N.D. Cal. Mar. 18, 2022) (persons expressing viewpoints on COVID-19), *aff'd*, No. 22-15443, 2022 WL 17818543 (9th Cir. Dec. 20, 2022). And the *Harris* factors make clear that no expansion is warranted here.

  **The language and history of the Act do not support the RNC's argument.** Political affiliation is not a "personal characteristic" like those listed in the Act. *Koebke v. Bernardo Heights Country Club*, 36 Cal. 4th 824, 842 (2005). Religion is the only protected class that is based on a system of beliefs like political affiliation. But religion and political affiliation are different. There are no "large bodies of statutory and constitutional law on both state and federal levels designed to protect classes of persons" based on political affiliation. *Harris*, 52 Cal. 3d at 1161, n.9. In contrast, federal and state law broadly protect against religious discrimination. *See, e.g.*, Title II of the Civil Rights Act, 42 U.S.C. § 2000a *et seq.*; *State Public Accommodation Laws, Nat'l Conf. of State Legislatures* (June 25, 2021), https://www.ncsl.org/civil-and-criminal-justice/state-public-accommodation-laws ("All states with a public accommodation law prohibit discrimination on the grounds of … religion.").

  **Google has a legitimate interest in protecting users.** Google need not establish that it has an interest in "subordinat[ing] politically affiliated emails," as the RNC contends, Opp. 13, because Google has a legitimate interest in filtering spam for Gmail users. *See* Compl. ¶ 27. And while it is true that some senders may be impacted by Gmail's spam filters if, for example, they fail to follow Google's guidelines (*see* Bali Decl., Ex. N at 1, Dkt. 30-15), the "particular business interests of the purveyor," including "maintaining order" and "protecting a business reputation" can be "sufficient to justify distinctions among … customers." *Harris*, 52 Cal. 3d at 1162.

  **Extending the Act would have detrimental consequences.** Courts should be skeptical of "extending the Act's reach any further," particularly where it would "open the door for a seemingly endless stream of new cases never contemplated by the Legislature." *See Gayer v. Polk Gulch, Inc.*, 231 Cal. App. 3d 515, 525 (1991). The term "political affiliation" is ill-defined, and treating it as a protected class risks dramatically expanding the Act to any "political" group.

### C.    The RNC Cannot State a Claim Under the Unfair Competition Law ("UCL")

The RNC has abandoned its fraud-based UCL claim (Opp. 18-19) so it should be dismissed with prejudice. Further, because the RNC has failed to plead any other viable claim, Opp. 18, the RNC's UCL claim based on "unlawful" conduct must likewise be dismissed. Mot. 17. That leaves only the RNC's "unfairness" claim, which is meritless for many reasons.

To state a claim under the UCL's unfairness prong, the RNC must allege conduct that: "(1) [is] tethered to some legislatively declared policy; (2) is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers; or (3) cause[s] unforeseeable injuries to consumers that are not outweighed by countervailing benefits." *Harris v. LSP Prods. Grp., Inc.*, No. 18-cv-02973, 2021 WL 2682045, at *13 (E.D. Cal. June 30, 2021) (Nunley, J.). The RNC says that it has met all three tests. The RNC is wrong.

The RNC first argues that it has satisfied the tethering test because "Google's conduct is at least 'comparable' to violations of other asserted laws." Opp. 19 (internal quotation omitted). But the RNC's Complaint does not identify any public policy that Google allegedly violated. Nor does it allege that the effects of Google's conduct are "comparable to … a violation of" any statute. Spam filtering is *consistent with*, not contrary to, well-established public policy. *See, e.g.*, 15 U.S.C. § 7701(a); Cal. Bus. & Prof. Code § 17529.

The RNC only briefly mentions the second and third tests, and merely repeats its conclusory allegations reciting their elements. *Compare* Compl. ¶ 78 *with* Opp. 19. That "formulaic recitation of the elements" of the claim does not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see e.g.*, *Marcus v. Apple, Inc.*, No. 14-03824, 2015 WL 151489, at *4 (N.D. Cal. Jan. 8, 2015) (dismissing unfairness claim based on conclusory allegations). The RNC invokes the "danger of permitting corporate interference in the communications of political organizations[,]" Opp. 19, but again, the RNC has not plausibly alleged any facts showing that Google did anything other than apply its standard spam filtering algorithms to the RNC's emails.

Further, the RNC has not alleged and cannot allege the causation required for UCL standing. The RNC argues that requirement is met because it alleges that Google "relegated critical RNC emails to spam during pivotal periods of donation" and "the loss of donations would

not have occurred without the *en masse* relegation." Opp. 19. But speculation is not a substitute for factual allegations showing that the RNC lost donations. *See Sandoval v. Cal-W. Reconveyance Corp.*, No. 13-CV-00114, 2013 WL 12128818, at *9 (C.D. Cal. June 4, 2013).

### D.   The RNC Fails to Plead Any Elements of Intentional Interference with Prospective Economic Relations

The RNC urges the Court to accept its speculative theory that it would have received donations from unspecified supporters had its emails not been treated as spam. That theory fails.

**First,** the RNC has failed to plead any specific economic relationship that could provide the basis for a tortious interference claim. *See Fernandes v. TW Telecom Holdings, Inc.*, No. 15-cv-01976, 2016 WL 704723, at *6 (E.D. Cal. Feb. 23, 2016) (Nunley, J.).

Nor has the RNC shown that it was "reasonably probable that the prospective economic advantage would have been realized but for [Google's alleged] interference." *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 522 (1996). The RNC argues that "[b]ut for Google diverting the RNC's emails, some of the RNC's many subscribers would have interacted with the emails, as they do every month, including by donating to the RNC's cause." Opp. 21. Speculating that subscribers would have donated is not the same as pleading facts.

**Second,** because the RNC fails to plead any specific economic relationships, it necessarily fails to allege that Google had any knowledge of those relationships. *See Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 962 (S.D. Cal. 2021). That the RNC "contacted Google to discuss the issue" does not plead knowledge of specific relationships. *See* Compl. ¶¶ 3, 28, 30-52.

**Third,** the RNC fails to allege that Google "engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995). The RNC argues that "intentionally divert[ing] RNC emails" to spam is independently wrongful because it constitutes "political discrimination[,]" and "Google repeatedly lied about it." Opp. 21. But again, the RNC has not alleged facts supporting its discrimination theory, nor has it identified a single dishonest statement by Google. *See supra* at 1-2. And none of this amounts to "independently actionable" conduct. *See* Mot. 20-21.

-9-

**Fourth,** the RNC "has failed to plead facts either showing or allowing the inference of actual disruption to its relationship" with specific donors. *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008). Again, simply asserting that Google disrupted relationships with unspecified supporters is plainly insufficient. *See id.*

**Fifth,** the RNC fails to plead economic harm caused by Google. The RNC simply asserts that, "[o]n information and belief, Google has caused hundreds of thousands of dollars, if not more, in damages to the RNC to date, and the long-term consequential losses likely total in the millions of dollars." Compl. ¶ 89. But the RNC has failed to plead "what these losses are, such as whether there are losses identifiable to a specific" act. *Soil Retention*, 521 F. Supp. 3d at 963.

### E.     The RNC Cannot State a Claim for Negligent Interference with Prospective Economic Relations

This claim fails for many of the same reasons as the RNC's intentional interference claim, and for the additional reason that the RNC cannot plead that Google owed any duty of care to third-party senders under the *Biakanja* factors.

The first factor, the extent to which the transaction was intended to affect the plaintiff, favors Google. At best, the RNC alleges only that Gmail wrongly classified its emails, which does not show that Google meant to affect or harm the RNC. To the contrary, the RNC alleges that Google tried to resolve the RNC's issues for 10 months. *See* Compl. ¶¶ 3, 28, 30-52.

The second factor, foreseeability of harm, also favors Google. The RNC argues that it "repeatedly told Google that Google's spam filtering was harming its relationship with its email subscribers." Opp. 22. But it is not the law that a duty of care is created every time a bulk sender complains to Google that some of its emails were sent to spam folders.

The third factor, the degree of certainty that the plaintiff suffered injury, favors Google as well. The RNC has not alleged facts showing that it suffered harm from Google's conduct, and its conclusory allegations of "financial harm" are insufficient. Opp. 23.

The fourth factor, closeness of the connection between the defendant's conduct and the injury suffered, also favors Google. Again, the RNC has not pleaded facts showing any connection between Google's spam filtering and speculative lost donations.

1  The fifth factor, moral blame attached to the defendant's conduct, favors Google. Because

2  the RNC has not and cannot plausibly allege intentional discrimination or bad faith, *see supra* at

3  1-2, there is no basis for attributing moral blame.

4  Finally, the sixth factor, a policy of preventing future harm, favors Google. The RNC

5  argues that "public policy strongly supports the prevention of Google's arbitrary interference."

6  Opp. 23. But that argument simply assumes the RNC's conclusion that Google interfered. To the

7  extent the RNC has been impacted, *it is the RNC* that is asking Google and this Court to treat

8  emails from the RNC differently than all other bulk senders, including other political groups.

9   **F.** **Google Is Immune from the RNC's Claims under Section 230**

10    **1.** **Section 230(c)(2)(B) bars the RNC's claims.**

11  Under Section 230(c)(2)(B), "a provider of software or enabling tools that filter, screen,

12  allow, or disallow content that the provider or user considers … harassing … or otherwise

13  objectionable may not be held liable for any action taken to" make those tools available. *Zango,*

14  *Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1173 (9th Cir. 2009). Here, all agree that Gmail's

15  spam filters are the sort of "tools" contemplated by Section 230(c)(2)(B), and that the RNC's

16  claims are based on Gmail's spam filters. Section 230(c)(2)(B) thus bars the RNC's claims.

17  The RNC argues that Section 230(c)(2)(B) does not apply here because the RNC's emails

18  were not spam, and therefore were not "harassing" or "otherwise objectionable" within the

19  meaning of Section 230(c)(2)(B). *See* Opp. 24-25. But whether or not the RNC deems its emails

20  to be spam is irrelevant. Congress purposely crafted Section 230(c)(2) to "establish[] a subjective

21  standard whereby" providers like Google are entitled to "decide what online material is

22  objectionable." *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1044 (9th

23  Cir. 2019). Thus, the real question is whether the RNC has plausibly alleged that Google did not

24  consider the RNC's emails to be spam and, instead, secretly sorted some of the RNC's emails into

25  spam folders for discriminatory reasons. The answer is "no." *See supra* at 1-2.[4]

26  _____

27  [4] The RNC argues that, under *Enigma*, providers "do not have unfettered discretion to declare online

28  content 'objectionable.'" Opp. 25 (quoting *Enigma*, 946 F.3d at 1047). But that means only that providers do not have unfettered discretion to declare any *category of content* "harassing" or "objectionable." That

-11-

1    As a fallback, the RNC argues that Google must "provide evidence" that it did, in fact,

2  consider the RNC's emails to be spam. Opp. 24, 25. That argument fails for at least two reasons.

3    **First,** "it is clear from the allegations of the complaint itself that [Google] reasonably

4  could conclude that [the RNC's] e-mails were 'harassing' and thus 'otherwise objectionable.'"

5  *Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1104 (N.D. Cal. 2011). Like the

6  plaintiff in *Holomaxx*, the RNC alleges that it sends torrents of emails to Gmail users—so many

7  that Gmail's spam filters have "relegated millions of [those] emails" to users' spam folders.

8  Compl. ¶ 2. In addition, the RNC implicitly admits that it may send emails to some people who

9  have asked not to receive them. *See id.* ¶ 22 (alleging that the RNC stops sending emails to those

10  who ask to be removed from its lists, but only "within a reasonable amount of time"). Finally,

11  many of the RNC's allegations—including the claim that its inboxing rate repeatedly dipped at

12  the same time and to the same degree each month—strongly suggest that the RNC simply failed

13  to comply with best practices for bulk mailers and, as a result, repeatedly tripped Gmail's

14  automated spam filters. So, too, does the RNC's failure to allege that *any* third-party senders were

15  treated differently than the RNC. In short, there is no reason to require Google to further "prove"

16  its state of mind; the RNC's allegations do that.

17    **Second,** Section 230(c)(2)(B) "must be interpreted to protect websites not merely from

18  ultimate liability, but from having to fight costly and protracted legal battles." *Fair Hous. Council*

19  *of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008). That

20  protection would be "nearly meaningless" if providers were forced to "litigate the question of

21  whether what [they] blocked was or was not spam." *e360Insight, LLC v. Comcast Corp.*, 546 F.

22

23  _____

24  point is irrelevant here because Google is not advocating for a novel reading of those terms. Google has
   never claimed, for example, that the RNC's emails were "harassing" or "objectionable" because they

25  contained "political content." Opp. 25 (citation omitted). Rather, as the Complaint alleges, Google's
   position is that some of the RNC's emails were "harassing" and "objectionable" because they were spam.
   The RNC cites no cases questioning whether spam is a category of content properly considered to be

26  "harassing" and "objectionable." To the contrary, the RNC cites authorities supporting that obvious
   proposition. *See, e.g., Enigma*, 946 F.3d at 1052 ("[s]pam, malware and adware" are harassing and

27  objectionable); Adam Candeub & Eugene Volokh, *Interpreting 47 U.S.C. S 230(c)(2)*, 1 J. Free Speech L.
   175, 189 (2021) (arguing that Section 230(c)(2) supports "broad platform power to restrict … spam")

28  (cited at Opp. 25, 27, 28).

2:22-CV-01904-TLN-JDP
REPLY ISO MOTION TO DISMISS REPUBLICAN NATIONAL COMMITTEE'S VERIFIED COMPLAINT

1   Supp. 2d 605, 609 (N.D. Ill. 2008). Holding otherwise would create an easy-to-exploit hole in

2   Section 230 immunity and invite a flood of meritless lawsuits, like this one, demanding that

3   courts second-guess providers' highly technical filtering mechanisms.[5]

4          Lastly, the RNC argues that Section 230(c)(2)(B) does not apply because, allegedly,

5   "Google is the one unilaterally consigning the [RNC's] emails to spam, not its users." Opp. 27.

6   But that is not true. The RNC does not dispute that Gmail's spam filters are based, in large part,

7   on user feedback, including users' choices about which emails to categorize as spam. *See* Bali

8   Decl. Ex. B at 2, Dkt. 30-3. In any case, the RNC's argument is legally irrelevant. Section

9   230(c)(2)(B) applies when a provider, like Google, "has 'made available' for its users the

10  technical means to restrict access to items that [*the provider*] *has defined*" as harassing or

11  objectionable, including spam. *Zango*, 568 F.3d at 1176 (emphasis added). That is the case here,

12  and the RNC does not argue otherwise. Section 230(c)(2)(B) therefore applies. *See, e.g.*, *Divino*

13  *Grp. LLC v. Google LLC*, No. 19-cv-04749, 2022 WL 4625076, at *18 (N.D. Cal. Sept. 30, 2022)

14  (Section 230(c)(2)(B) barred claims based on YouTube's provision of "Restricted Mode" tool for

15  filtering content), *reconsideration denied*, 2023 WL 218966 (N.D. Cal. Jan. 17, 2023); *Prager*

16  *Univ. v. Google LLC*, No. 19CV340667, 2019 WL 8640569, at *10 (Cal. Super. Nov. 19, 2019).

17          **2.     Section 230(c)(2)(A) bars the RNC's claims.**

18          Section 230(c)(2)(A) immunizes Google against claims based on "any action" taken "in

19  good faith" to "restrict access to or availability of" material that Google, or its users, deem

20  "harassing" or "objectionable." 47 U.S.C. § 230(c)(2)(A). In addition to repeating the other

21  meritless arguments discussed above, the RNC claims that Section 230(c)(2)(A) does not apply

22  here because the RNC has "plausibly alleged that Google did not 'in good faith … consider[]'"

23  the RNC's emails to be spam. Opp. 26 (quoting 47 U.S.C. § 230(c)(2)(A)). But the RNC has

24  _____

25  [5] The RNC argues that the Court should ignore Section 230(c)(2)'s status as an immunity provision
    because many of its emails were allegedly sorted to spam, not just "a few marginal emails." Opp. 26. But

26  the RNC cites no authority for the proposition that Section 230(c)(2) immunity rises and falls with the
    number of emails at issue. The RNC also seems to suggest that, because its emails were political in nature,

27  they are categorically excluded from the scope of Section 230(c)(2). *See* Opp. 25. The plain language of
    Section 230(c)(2), which expressly immunizes the filtering and screening of "constitutionally protected"

28  content, defeats that argument. 47 U.S.C. § 230(c)(2)(A).

come nowhere near meeting its burden of alleging the "absence of good faith." *e360Insight*, 546 F. Supp. 2d at 609. In fact, as discussed above, the RNC's allegations tend to support rather than undermine the conclusion that Google, via its spam filters, made a good-faith determination that some of the RNC's emails qualified as spam. *See supra* at 1-2. Section 230(c)(2)(A) therefore bars the RNC's claims. *See, e.g.*, *Holomaxx*, 783 F. Supp. 2d at 1105 (Section 230(c)(2)(A) barred claims based on allegedly "faulty [email] filtering technology and techniques").

### 3.   Section 230(c)(2) bars claims for prospective injunctive relief.

In a last-ditch attempt to avoid Section 230(c)(2) immunity, the RNC argues that Section 230(c)(2) does not bar "claims for declaratory and injunctive relief." Opp. 29. In fact, courts have repeatedly held that Section 230(c)(2), like Section 230(c)(1), bars claims for declaratory and injunctive relief. *See, e.g.*, *Holomaxx*, 783 F. Supp. 2d at 1102, 1105; *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 630-31 (D. Del. 2007). And those decisions make perfect sense: Section 230(c)(2) immunity would be eviscerated if anyone whose content was deemed harassing or objectionable could sue for an injunction to have their content reinstated.

### 4.   Section 230(c)(1) bars the RNC's claims.

Because Section 230(c)(1) prohibits treating a provider "as the 'publisher or speaker' of content provided by another," *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019), it bars all claims based on a provider's "exercise of a publisher's traditional editorial functions." *Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 407 (6th Cir. 2014).

In this case, the RNC concedes (as it must) that Gmail's use of spam filters to sort the RNC's emails was an exercise of editorial discretion. *See Dyroff*, 934 F.3d at 1098 (Section 230(c)(1) barred claims based on use of automated "features and functions," including "algorithms," to organize content); *Force v. Facebook, Inc.*, 934 F.3d 53, 70 (2d Cir. 2019) (using algorithms to "arrang[e] and display[] others' content" is "an essential part" of publishing). Thus, all the RNC's claims seek to hold Google liable for its publisher activity and are barred by Section 230(c)(1). Indeed, courts routinely hold that Section 230(c)(1) bars claims, like the RNC's claims, that seek to hold providers liable for not publishing, blocking, or deprioritizing content. *See, e.g.*, *Riggs v. MySpace, Inc.*, 444 F. App'x 986, 987 (9th Cir. 2011) (Section

1  230(c)(1) barred claims based on removal of plaintiff's allegedly lawful content); *Sikhs for*

2  *Just."SFJ," Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1095-96 (N.D. Cal. 2015) (Section

3  230(c)(1) barred claims based on Facebook's alleged "discrim[ination] in "blocking Plaintiff's

4  [political] content"), *aff'd*, 697 Fed. App'x 526 (9th Cir. 2017). The RNC does not grapple with

5  that well-established law at all, let alone distinguish it.

6          In response, the RNC relies on *Henderson v. Source for Public Data, L.P.*, 53 F.4th 110

7  (4th Cir. 2022). Opp. 30. There, the Fourth Circuit found that Section 230(c)(1) did not apply to

8  claims under the Fair Credit Reporting Act alleging that the defendant website, among other

9  things, failed to provide certain disclosures and notices required of a credit reporting agency. The

10 RNC relies on *Henderson* to argue that Section 230(c)(1) does not apply here because "[n]one of

11 the RNC's claims seek to fault Google for the content of the [RNC's] emails." Opp. 30.

12         As the Fourth Circuit made clear, however, *Henderson*'s analysis applies to cases in

13 which plaintiffs seek to hold defendants liable for making content available to others. *See*

14 *Henderson*, 53 F.4th at 124 n.18. Here, in contrast, the RNC seeks to hold Google liable for

15 allegedly *not* making emails available to Gmail users. *See Divino Grp. LLC v. Google LLC*, No.

16 19-cv-04749, 2023 WL 218966, at *2 (N.D. Cal. Jan. 17, 2023) (recognizing that distinction).

17 And as many courts have held, Section 230(c)(1) squarely applies to those types of claims

18 because they necessarily seek to hold providers liable for exercising editorial discretion. *See, e.g.*,

19 *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) ("[L]awsuits seeking to hold a

20 service provider liable for its exercise of a publisher's traditional editorial functions—such as

21 deciding whether to publish, *withdraw*, *postpone* or alter content—are barred.") (emphasis

22 added); *see also Roommates.com*, 521 F.3d at 1170-71 ("[A]ny activity that can be boiled down

23 to deciding whether to exclude material that third parties seek to post online is perforce immune

24 under section 230."); *Divino*, 2022 WL 4625076, at *16-17 (Section 230(c)(1) barred claims

25 based on Google's alleged "decisions to remove, restrict, or demonetize" plaintiffs' content).

26 **III.    CONCLUSION**

27         For the foregoing reasons, Google respectfully requests that this Court grant its motion to

28 dismiss and dismiss the RNC's Complaint with prejudice.

Dated:  March 27, 2023                    **PERKINS COIE LLP**


                                          By: _____
                                              Sunita Bali, Bar No. 274108
                                              Danielle Sivalingam, Bar No. 294369
                                              Angie Young Kim, Bar No. 270503
                                              Abdul Kallon (*pro hac vice*)
                                              Ryan M. Spear (*pro hac vice*)
                                              Michael Robert Huston (*pro hac vice*)

                                              *Attorneys for Defendant Google LLC*
                                              *(erroneously sued as Google Inc.)*

1

## CERTIFICATE OF SERVICE

2    This is to certify that a true and correct copy of the above and foregoing has been served

3  upon all counsel of record, via the Court's CM/ECF system on March 27, 2023 as follows:

4
        Harmeet K. Dhillon (harmeet@dhillonlaw.com)
        Michael A. Columbo (mcolumbo@dhillonlaw.com)
5
        Jeremiah D. Graham (jgraham@dhillonlaw.com)
        Anthony J. Fusaro, Jr. (afusaro@dhillonlaw.com)
6
        DHILLON LAW GROUP INC.
7       177 Post Street, Suite 700
        San Francisco, California 94108
8       Telephone: (415) 433-1700

9
        Counsel for Plaintiff
10      Republican National Committee

11      Thomas R. McCarthy (tom@consovoymccarthy.com)
        Thomas S. Vaseliou (tvaseliou@consovoymccarthy.com)
12      Conor D. Woodfin (conor@consovoymccarthy.com)
        CONSOVOY MCCARTHY PLLC
13      1600 Wilson Blvd., Suite 700
        Arlington, VA 22209
14      Telephone: (703) 243-9423

15
        Counsel for Plaintiff
16      Republican National Committee

17

18                                    _/s/ Sunita Bali_____
                                         Sunita Bali
19

20

21

22

23

24

25

26

27

28