**PERKINS COIE LLP**

Sunita Bali, Bar No. 274108
SBali@perkinscoie.com
Angie Young Kim, Bar No. 270503
AngieKim@perkinscoie.com
Tyler Fergusson, Bar No. 345065
TFergusson@perkinscoie.com
605 Howard Street, Suite 1000
San Francisco, CA 94105
Telephone: 415.344.7000
Facsimile: 415.344.7050

Michael R. Huston (*pro hac vice*)
MHuston@perkinscoie.com
Matthew R. Koerner (*pro hac vice*)
MKoerner@perkinscoie.com
2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012
Telephone: 602.351.8000
Facsimile: 602.648.7000

Ryan Spear (*pro hac vice*)
RSpear@perkinscoie.com
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Telephone: 206.359.8000
Facsimile: 206.359.9000

*Attorneys for Defendant Google LLC*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE, | No. 2:22-cv-01904-DJC-JDP |
| Plaintiff, | **DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS THE REPUBLICAN NATIONAL COMMITTEE'S VERIFIED FIRST AMENDED COMPLAINT** |
| v. | |
| GOOGLE LLC, | |
| Defendant. | Date: March 14, 2024 |
| | Time: 1:30 p.m. |
| | Dept: Courtroom 10, 13th Floor |
| | Judge: The Hon. Daniel J. Calabretta |

**TABLE OF CONTENTS**

                                                                    **Page**

I.      Introduction ..........................................................................................1

II.     Argument ..............................................................................................2

        A.      The RNC still fails to plead the required elements for Count Four...........2

                1.      The RNC still fails to plead "independently wrongful
                        conduct."..................................................................................2

                2.      The RNC still fails to allege this claim's other four elements.........4

        B.      The RNC fails to plead a claim under the Unfair Competition Law. ........5

                1.      The RNC lacks a remedy under the UCL. ........................................5

                2.      The RNC still fails to plead unlawful or unfair conduct. .................7

        C.      Section 230 of the Communications Decency Act bars this suit..............9

                1.      The RNC still does not plausibly allege political
                        discrimination, so Section 230(c)(2)(A) applies. .............................9

                2.      Section 230(c)(2)(B) and (c)(1) also bar the RNC's claims. ........... 15

III.    Conclusion........................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................................13

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................................... 10, 11

*Candelore v. Tinder, Inc.,*
    19 Cal. App. 5th 1138 (2018) ...........................................................................8

*Carvalho v. Equifax Info. Servs., LLC,*
    629 F.3d 876 (9th Cir. 2010) ........................................................................ 3, 14

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) ...........................................................................................6

*Divino Group LLC v. Google LLC,*
    No. 19-cv-04749, 2023 WL 218966 (N.D. Cal. Jan. 17, 2023) ....................................15

*Doe v. CVS Pharmacy, Inc.,*
    982 F.3d 1204 (9th Cir. 2020) ...........................................................................8

*Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.,*
    528 U.S. 167 (2000) .........................................................................................6

*Grotheer v. Escape Adventures, Inc.,*
    14 Cal. App. 5th 1283 (2017) ...........................................................................4

*Henderson v. Source for Pub. Data, L.P.,*
    53 F.4th 110 (4th Cir. 2022) .............................................................................15

*Holomaxx Techs. v. Microsoft Corp.,*
    783 F. Supp. 2d 1097,1105 (N.D. Cal. 2011) ....................................................... 12, 13

*Khoja v. Orexigen Therapeutics, Inc.,*
    899 F.3d 988 (9th Cir. 2018) ......................................................................... 10, 11

*Kwikset Corp. v. Superior Court,*
    51 Cal. 4th 310 (2011)......................................................................................7

*Madrid v. Perot Sys. Corp.,*
    130 Cal. App. 4th 440 (2005)........................................................................5, 6

*NetChoice, L.L.C. v. Paxton*,
   49 F.4th 439 (5th Cir. 2022) .................................................................... 3

*New.Net, Inc. v. Lavasoft*,
   356 F. Supp. 2d 1090 (C.D. Cal. 2004) ............................................... 3, 7

*Nia v. Bank of Am., N.A.*,
   603 F. Supp. 3d 894 (S.D. Cal. 2022) ...................................................... 8

*Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*,
   2 Cal. 5th 505 (2017) ................................................................................ 4

*Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*,
   521 F. Supp. 3d 929 (S.D. Cal. 2021) .................................................. 4, 5

*Swipe & Bite, Inc. v. Chow*,
   147 F. Supp. 3d 924 (N.D. Cal. 2015) ..................................................... 4

*Sybersound Recs., Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008) .................................................................. 5

*Webster v. Ebright*,
   3 Cal. App. 4th 784 (1992) ....................................................................... 3

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
   42 Cal. App. 4th 507 (1996) ..................................................................... 4

*Wright v. Serv. Employees Int'l Union Local 503*,
   48 F.4th 1112 (9th Cir. 2022) .................................................................. 6

*Zango, Inc. v. Kaspersky Lab, Inc.*,
   568 F.3d 1169 (9th Cir. 2009) ............................................................... 15

**STATUTES**

47 U.S.C. § 230(c)(1) ................................................................................... 15

47 U.S.C. § 230(c)(2)(A) ............................................................................... 9

47 U.S.C. § 230(c)(2)(B) .............................................................................. 15

**RULES**

Fed. R. Civ. P. 9(b) ........................................................................................ 7

## I.     Introduction

The Amended Complaint still has all the same flaws this Court identified when it dismissed the RNC's original complaint, plus a few more. The RNC still fails to plead required elements for each of its only two remaining claims for relief. And the RNC still does not come close to plausibly alleging that political-viewpoint discrimination was the reason why some of its emails were flagged as spam by Gmail's spam filters—as opposed to the obvious alternative explanation that recipients of the RNC's emails frequently marked them as spam. Nothing in the RNC's Opposition to Google's Motion to Dismiss ("Opp.") rectifies those flaws.

When this Court dismissed the RNC's claim for intentional interference with prospective economic relations, it observed that California law requires the RNC to allege some "independently wrongful" act. Dkt. 53 at 28–30 ("Order"). But the RNC still fails to do so. It relies on the circular argument that Google's alleged violation of the Unfair Competition Law ("UCL") qualifies as the "independently" wrongful act, just as the RNC claims tortious interference as the predicate act under the UCL. The RNC's only other theory of wrongfulness is its unprecedented assertion that email services like Gmail are common carriers, an assertion this Court already rejected because it would mean email services must "deliver spam." Order 22. And the RNC still fails to identify *anyone* who would have donated to it but did not because of spam filtering.

The RNC's UCL claim also fails because the RNC does not plead its entitlement to the only possible remedy—an injunction. The Amended Complaint concedes that the spam filtering to which the RNC objects has not occurred for more than a year, and the RNC offers nothing besides baseless speculation to suggest it could recur. The RNC's problem with Google's spam filter has thus long-since been resolved, and courts do not issue injunctions to address non-problems. Moreover, no court has ever held that it is unlawful or unfair for an email service to filter objectionable spam.

The RNC attempts to conceal its pleading deficiencies with its political-viewpoint discrimination theory, but its allegations are no more plausible than when

1   this Court last dismissed them. Indeed, the new allegations in the RNC's Amended
2   Complaint make the RNC's discrimination theory even less plausible now.

3        Finally, the RNC's claims are still foreclosed by the clear text of Section 230.
4   Many of the RNC's featured allegations serve only to undermine its discrimination
5   theory and support the obvious alternative explanation: Some RNC emails went to
6   spam folders for good-faith reasons within *the RNC's control*, including because of the
7   RNC's persistently high spam-complaint rates and hyperlinks within its emails. And
8   nothing in the RNC's opposition remedies the core implausibility of the Amended
9   Complaint: The RNC cannot plausibly explain why Google would engage in political-
10  viewpoint discrimination but would do so only for a small percentage of messages
11  and only intermittently. The obvious explanation is the one that Google long ago gave
12  the RNC: "a lot of Gmail users [were] marking [RNC] messages as spam." First
13  Amended Complaint ("FAC") ¶ 61 (second alteration in original).

14       After two unsuccessful attempts to plead plausible claims against Google, there
15  is no reason to think the defects of these claims can be cured. This Court therefore
16  should dismiss the Amended Complaint with prejudice.

17  **II.**    **Argument**

18      **A.**    **The RNC still fails to plead the required elements for Count Four.**

19       This Court dismissed the RNC's intentional interference claim because the RNC
20  failed to allege that Google's "alleged interference constituted a separate,
21  independently 'wrongful act' that would be an appropriate predicate offense." Order
22  30. The Amended Complaint does not remedy that deficiency. *See* Motion to Dismiss
23  ("MTD") 8–12. And the RNC's Opposition does not alter that conclusion.

24      **1.**    **The RNC still fails to plead "independently wrongful conduct."**

25       The RNC does not dispute that its dismissed-with-prejudice claims cannot form
26  the basis for independently wrongful conduct. *See* MTD 9; Opp. 18–21. Nor does the
27  RNC defend its new allegation that Google somehow violated "established industry,
28  trade or professional rules or standards, such as Google's own terms of service and

implied warranties." FAC ¶ 158; *see* MTD 9–10. By failing to address Google's challenges to those arguments, the RNC "has abandoned" them. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 888 (9th Cir. 2010). The only other predicate offense alleged in Count Four is a violation of the UCL. *See* FAC ¶ 158. But the RNC's UCL claim cannot serve as a predicate offense because the RNC still fails to plead a viable remedy and the necessary elements of that claim. *See* Part II.B; *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1114 & n.11 (C.D. Cal. 2004) ("Plaintiff cannot show that Defendant engaged in independently wrongful conduct[ ]" with the "circular reasoning" that "the [UCL] claim should be sustained because Defendant's conduct … constituted … tortious interference" and "its tortious interference claim should be sustained because Defendant's conduct purportedly violates the … [UCL].").

The RNC's Opposition then shifts tactics and raises a new predicate offense. Recognizing that this Court has already dismissed its *statutory* common-carrier claims, Order 23, the RNC repackages them under "the *common law's* established common-carrier doctrine." Opp. 20 (emphasis added). The RNC does not specify which "common law" it relies on (e.g., California or federal), and this new theory does not appear in the RNC's allegations regarding this claim. *See* FAC ¶¶ 154–163. But regardless, the RNC's new argument fails for two reasons.

**First**, under California law, "Civil Code section 2100 codified the common law governing common carriers." *Webster v. Ebright*, 3 Cal. App. 4th 784, 786 (1992). And under that statute, Google is "not a common carrier," as this Court has already held. Order 21. The result is the same under California common law. *See Webster*, 3 Cal. App. 4th at 791 ("[T]he Civil Code, as a matter of fact, was not designed to make any general alterations in the established doctrines and rules of the common law.") (citation omitted). Nor is Google a common carrier under some other common law. The RNC continues to advance what this Court described as an "amorphous definition of common carrier" that invokes the "public interest." Order 21; *see* Opp. 20 (quoting *NetChoice, L.L.C. v. Paxton*, 49 F.4th 439, 470–472 (5th Cir. 2022)). But regardless of

the applicable standard, "no court … has found an email service provider [like Google] to be a common carrier." Order 16. Nor is that surprising; accepting the RNC's position would mean Google could not filter spam *at all* and would be required to "deliver spam to the millions of Americans who use [its] services"—even though all agree spam is not just annoying but often dangerous. Order 22. This Court wisely rejected that unprecedented and reckless argument before. It again should not "be the first" (Order 16) to find that email services are actually common carriers.

**Second**, "even if Google were a common carrier, the RNC did not avail itself of Google's services, and Google owes no duty to it." Order 22. Common carriers owe certain duties only "towards their customers." *Grotheer v. Escape Adventures, Inc.*, 14 Cal. App. 5th 1283, 1294 (2017) (cited at Order 22). But the RNC "is not a Gmail user." Order 36. The RNC thus fails to establish any "independently wrongful conduct."

### 2. The RNC still fails to allege this claim's other four elements.

The RNC also fails to allege the four remaining elements of intentional interference: a specific economic relationship, knowledge, disruption, and harm. *See Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 522, 525 (1996).

The RNC does not identify any "specific" subscribers, their relationship with the RNC, or their donation history. MTD 10–11. Instead, the RNC says its vague allusions to unnamed "subscribers," some of whom might be donors or potential donors, are enough. Opp. 18–19. They are not. A plaintiff must plead "that the defendant … disrupted a particular relationship with a *known* third party." *Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 516 (2017) (emphasis added).

Because the RNC fails to "specif[y] [any] third party," it necessarily fails to plead that Google knew of those relationships. *Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 962 (S.D. Cal. 2021). It is not enough to allege, as the RNC contends (Opp. 19), simply that it "made Google aware" of "email diversions" and "potential harm." *Swipe & Bite, Inc. v. Chow*, 147 F. Supp. 3d 924, 935 (N.D. Cal. 2015) (dismissing claim where "Plaintiff merely alleges that [defendant] knew of the

agreements [Plaintiff] had with 'contractors, vendors, employees, and customers'").

On the remaining two elements (MTD 11–12), the RNC does not deny that it fails to allege any specific lost donations. *See* Opp. 20–21. Instead, the RNC says the inboxing issues "harm[ed] the RNC's ability to fundraise, communicate with, and mobilize its supporters" at the end of the month. Opp. 20. But that vague assertion fails "to plead facts either showing or allowing the inference of actual disruption to [the RNC's] relationship" with specific donors. *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008); *see Soil Retention*, 521 F. Supp. 3d at 963. The problem is not the RNC's failure to allege "exact damages" (Opp. 20); it is the failure to plausibly plead any specific losses at all caused by the alleged inboxing issue.

The bottom line: To plausibly allege interference by Google with prospective donations, the RNC had to identify at least one person who would have donated but did not because certain emails were delivered to that person's spam folder. The RNC's admitted failure to do so is yet another reason to dismiss this claim again.

### B.     The RNC fails to plead a claim under the Unfair Competition Law.

The RNC fails to state a claim under the UCL for two reasons: it does not plead either a viable remedy or any unlawful or unfair conduct.

### 1.     The RNC lacks a remedy under the UCL.

The only remedies available under the UCL are restitution or an injunction. MTD 12–14. The RNC does not claim to seek restitution. *See* Opp. 12–18. So the only live issue is whether the RNC has pleaded the requirements for an injunction under the UCL. It has not. The UCL claim must therefore be dismissed.

Hoping to avoid that result, the RNC tries to re-frame the issue as a "mootness" issue under federal law. Opp. 17. That simply misunderstands Google's argument, which focuses on the legal standard for a remedy under state law. Again, under the UCL, "[i]njunctive relief is appropriate only when there is a threat of continuing misconduct." *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 463 (2005). It "is not a remedy designed to right completed wrongs." *Id.* at 465.

But that is precisely what the RNC seeks to do here. The RNC concedes the alleged misconduct "has stopped." FAC ¶ 4. It does not allege any facts showing any future threat of objectionable spam filtering. Thus, under California law, the RNC "fail[s] to present a viable claim for injunctive relief." *Madrid*, 130 Cal. App. 4th at 466; *see id.* at 462 (sustaining demurrer where the "complaint's factual allegations referred only to acts that happened in the past" and "did not allege a continuing threat").

For many of the same reasons, the RNC also lacks Article III standing. As Google explains (MTD 13), a party lacks standing for injunctive relief unless it alleges a "real or immediate threat that [it] will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). "[P]ast exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects." *Wright v. Serv. Employees Int'l Union Local 503*, 48 F.4th 1112, 1120 (9th Cir. 2022). That, again, is the case here where the RNC seeks merely to remedy "[p]ast wrongs," not to stop "the threat of future injury." *Id.* at 1118.

Nor does the voluntary-cessation doctrine apply here, contrary to the RNC's suggestion. *See* Opp. 17. For standing, a plaintiff must allege that a defendant's "unlawful conduct … was occurring at the time the complaint was filed" or that "threatened injury [is] certainly impending." *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 184, 190 (2000). By comparison, mootness and voluntary cessation apply after "the case has been brought and litigated, often … for years." *Id.* at 191. But again, as the RNC concedes, Google's alleged misconduct "stopped" before the Amended Complaint was filed. FAC ¶ 4. In fact, the last time the inboxing issue allegedly occurred was weeks before the RNC first filed suit. FAC ¶ 103. This conduct thus was not "occurring" when the RNC sued. Nor does the RNC allege any "real or immediate threat that [it] will be wronged again." *Lyons*, 461 U.S. at 111.

Under California and federal law, the RNC does not plead a right to UCL relief.

### 2.   The RNC still fails to plead unlawful or unfair conduct.

In dismissing the RNC's UCL claim, this Court "granted leave to amend this claim to establish a plausible theory of unfairness or unlawfulness." Order 37. As Google explained (MTD 14–15), the RNC fails to establish either prong.

For the "unlawfulness" prong, the RNC concedes that its unlawfulness theory survives only if the RNC pleads "its other claims, including the interference claim." Opp. 12 n.8. But that is the only other claim remaining (*see* Order 38), and the RNC may not premise its UCL claim on its tortious interference claim, and its tortious interference claim on its UCL claim, as that "tortured circular reasoning" effectively eliminates key elements of both claims. *New.Net, Inc.*, 356 F. Supp. 2d at 1114 n.11. And in any event, the RNC's intentional-interference claim fails for all of the reasons discussed above. *See* Part II.A.

The RNC also fails to establish the "unfairness" prong. The essence of the RNC's claim still sounds in fraud and so must allege reliance *and* satisfy the particularity requirement of Federal Rule of Civil Procedure 9(b). MTD 15. For example, the RNC alleges that Google falsely "presents Gmail as an email service provider that delivers emails in a fair and good-faith manner." FAC ¶ 151. Though the RNC disputes that this allegation sounds in fraud (Opp. 15–16), this Court has already found that language to "sound[ ] in fraud such that the RNC would still be required to plead reliance." Order 36 (citing Complaint (Dkt. 1) ¶ 78). The RNC still does not do so. Indeed, the RNC could not have relied on this statement because the RNC "is not a Gmail user." *Id.*

The RNC argues instead that the Amended Complaint adequately alleges a fraudulent statement under Rule (9)(b) because it "alleges that the communications occurred between RNC and Google employees, provides the approximate date, quotes the email communications, and explains why Google's excuse for the diversion is incorrect." Opp. 16. But none of those communications shows, as the RNC must, "that the misrepresentation was an immediate cause of the injury-producing conduct." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 327 (2011) (citation omitted). Nor do

they show any reliance because, again, the RNC "is not a Gmail user." Order 36.

The RNC next contends that it satisfies all three tests for the "unfairness" prong. Opp. 12–15. To start, the RNC invokes the first two tests, requiring that a "practice's impact on the victim outweighs 'the reasons, justifications and motives of the alleged wrongdoer'" or that "the practice is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" Opp. 12–13 (quoting *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214–1215 (9th Cir. 2020)). To satisfy these two tests, the RNC relies on its political-discrimination theory. Opp. 13–14. But that theory is implausible, as explained below, so it fails to satisfy either test. *See* Part II.C.1. And neither of the cases on which the RNC relies (Opp. 13) found that alleged "[d]iscrimination based on political affiliation or views" was unfair. One considered alleged "discriminat[ion] against persons of Iranian or Middle Eastern descent." *Nia v. Bank of Am., N.A.*, 603 F. Supp. 3d 894, 899 (S.D. Cal. 2022). The other considered alleged "age discrimination." *Candelore v. Tinder, Inc.*, 19 Cal. App. 5th 1138, 1142 (2018). The RNC fails to identify any case holding that political discrimination qualifies as an "unfair practice" under the UCL. And given the dramatic implications that would follow from holding that a private business must accept all comers no matter their political viewpoints, this Court should not be the first to judicially impose that standard. *Cf.* Order 25 ("[T]his Court declines to effectively add 'political affiliation' to the long list of characteristics protected by the Unruh Act.").

The RNC also relies on the third unfairness test, requiring a plaintiff to plead that "the challenged conduct is 'tethered to any underlying constitutional, statutory or regulatory provision.'" Opp. 13 (quoting *Doe*, 982 F.3d at 1214–1215). The RNC says that "Google's conduct is at least 'comparable' to actual violations of the other laws," including "the Unruh Civil Rights Act" and "California's common-carrier law." Opp. 14. But the RNC already made the same argument before. *See* Dkt. 35 at 19 ("Google's conduct is at least 'comparable' to violations of other asserted laws."). And this Court already disagreed and dismissed those claims with prejudice. Order 16–28, 36–37.

1    Even on the merits, neither the Unruh Act nor any common-carrier law supports

2 the RNC's unfairness argument. As this Court has explained, "'political affiliation' is not

3 one of the enumerated classes under the Unruh Act.'" Order 23. And under common-

4 carrier law (statutory or the common law), Google is not a common carrier and does

5 not owe the RNC any duty, as Google explains above. *See* Part II.A.1. No conduct

6 alleged by the RNC here is comparable to or the same as violations of those laws.

### C.    Section 230 of the Communications Decency Act bars this suit.

Three separate forms of statutory protections continue to bar the RNC's claims.

#### 1.    The RNC still does not plausibly allege political discrimination, so Section 230(c)(2)(A) applies.

After finding all the requirements for Section 230(c)(2)(A) satisfied, Order 6–15,

this Court granted leave to amend *only* to give the RNC an opportunity to plead "a

lack of good faith" on Google's part. Order 15. The Court previously did "not find the

RNC's allegation that Google was knowingly and purposefully harming the RNC be-

cause of political animus to be a 'reasonable inference.'" Order 12. Nothing in the

Amended Complaint makes that inference more reasonable than it was before.

**First**, the RNC says it followed the "best practices" for bulk emailers (like itself),

including emailing only those "who requested it and who recently actively engaged

with RNC content" and "run[ning] many internal tests." Opp. 4. But the RNC's own alle-

gations show it regularly violated those "best practices," including the most important

one: reducing how frequently recipients of the RNC's emails marked them as spam.

Critically, as the RNC discloses for the first time in its Amended Complaint, its

"average spam rate" during the relevant time period "was approximately 0.14%" and

even hit "0.3%." FAC ¶ 42. These user-generated spam-complaint rates flout industry-

standard guidance, including from Google, that rates over 0.1% (and especially 0.3%)

can "lead to increased spam classification." *Prevent mail to Gmail users from being*

*blocked or sent to spam*, Google Help, perma.cc/95SX-5HJM ("*Bulk Email Recommen-*

*dations*"). The RNC's own vender Salesforce has long agreed, in guidance the RNC

does not dispute: "The limit for spam complaints is … 0.1%" and "spam rates have a lasting negative impact." Salesforce, Abuse Reports, perma.cc/NQT6-556B?type=image (Jan. 15, 2020) ("*Salesforce Guidance*"); *see* MTD 3, 17. Nor does the RNC dispute that these spam-complaint rates are the most important input for Gmail's spam filters. *See* MTD 5. But contrary to all of that guidance and advice, and as Google warned the RNC, "a lot of Gmail users [were] marking [RNC] messages as spam." FAC ¶ 61 (second alteration in original). The RNC's high spam-complaint rates–contrary to the best practices it says it followed–thus provide an "obvious alternative explanation" for the RNC's inboxing issues. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 567 (2007).[1]

The RNC's does not dispute that this guidance is incorporated by reference into the Amended Complaint. *See* MTD 3. Indeed, the RNC relies on the same guidance–including as to spam-complaint rates–to support its other arguments. *See, e.g.*, Opp. 9 (quoting *Bulk Email Recommendations*). Rather, the RNC complains that Google added its guidance to one specific website after this lawsuit, purportedly making it a "self-serving, post-filing alteration." *Id.* Notably, the RNC ignores that the RNC's own vendor, Salesforce, has long published the same guidance. *See* MTD 3, 16–17. In any event, Google is simply relying on the RNC's *own* allegations about Google's published guidance in the RNC's *own* Amended Complaint. *See* FAC ¶ 32 (citing *Bulk Email Recommendations* and incorporating these "Gmail best practices"). And because "courts must consider the complaint in its entirety, as well as … documents incorporated into the complaint by reference," this spam-rate guidance must be considered. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citation omitted). The RNC cannot cherry-pick the parts of this guidance it wants this Court to consider, *see, e.g.*, FAC ¶ 32; Opp. 9, while simultaneously urging the Court to "disregard" the unfavorable parts, Opp. 9. The incorporation-by-reference doctrine

---

[1] Recognizing its problematic spam-complaint rates, the RNC tries to walk back some of its allegations. The RNC contends that its spam-complaint rate was "extremely low, with a median of 0.1%." Opp. 1 (citing FAC ¶ 42). But, again, "[t]he limit for spam complaints is 1 per every thousand, or 0.1%." *Salesforce Guidance*. And regardless of the "median" rate, the RNC's "average" rate was even higher: "0.14%," which shows that the RNC's rate was regularly above 0.1%. FAC ¶ 42.

1    "prevents plaintiffs from selecting only portions of documents that support their

2    claims, while omitting portions of those very documents that weaken—or doom—their

3    claims." *Khoja*, 899 F.3d at 1002. Here too, the guidance dooms the RNC's claims.

4            The RNC's high spam-complaint rates also undermine its argument that Google

5    must have been discriminating based on political viewpoints because, the RNC says, it

6    emailed only those "who requested it and who recently actively engaged with RNC

7    content." Opp. 4. As this Court observed, "just because a user interacts with a com-

8    pany at one point in time does not mean that the user 'solicits' each and every email

9    sent by the entity." Order 8. The RNC's high user-generated spam-complaint rates

10   prove that point. Regardless of how "active" recipients allegedly were, they still were

11   marking RNC emails as spam at a much higher rate than the industry recommends.

12           The RNC responds that its alleged A/B test "tends to disprove" the obvious al-

13   ternative explanation that Gmail's algorithm sent RNC emails to spam mostly because

14   of its high spam-complaint rates, asserting that "both emails [in the test] were sent

15   nearly contemporaneous" and so, if spam-complaint rates were to blame, both emails

16   would have gone to spam. Opp. 11. But that argument ignores that spam-complaint

17   rates are not the *only* spam-filter input. As this Court has already observed, "[t]he fact

18   that one version did [better] indicates it was not the substantive content or sender of

19   the email, but rather some other factor, such as the different links contained with the

20   email or some other technical feature of the email, that was triggering application of

21   the spam filter." Order 11–12. This is confirmed by the Amended Complaint: "The only

22   difference between the two pages [linked in the two emails] is that one requires the

23   donor to provide a cellphone number, while the other makes the cellphone-number

24   field optional." FAC ¶ 56. This technical feature—not political animus—is the "obvious

25   alternative explanation" for the A/B test. *Twombly*, 550 U.S. at 567.

26           The RNC agrees (at least in part): there was no "content-based reason" for the

27   A/B test's inboxing issue. Opp. 11. But, the RNC retorts, "discriminators don't

28   necessarily discriminate every chance they get." *Id.* In other words, the RNC abandons

its argument that the A/B test shows *any* political discrimination by Google.

**Second**, the RNC complains that none of Google's recommendations on how to fix the inboxing issues "worked" and that Google eventually "fell silent." Opp. 5–6. But Google working with the RNC "[f]or nearly a year," including traveling to the RNC's office to "give a training" on email best practices, is not plausibly consistent with intentional discrimination against the RNC's political viewpoint. FAC ¶¶ 52, 88, 94; *see* MTD 17 (collecting over a dozen allegations showing good faith). In response, the RNC speculates that "discriminators may go to great lengths to hide" their conduct. Opp. 11–12 (citation omitted). But this Court has already disagreed: "the fact that Google engaged with the RNC for nearly a year and made suggestions that improved email performance is inconsistent with a lack of good faith." Order 11. Nor do the RNC's allegations about Google being "silent" make the RNC's theory any more plausible now than before. FAC ¶ 52 (previously Complaint ¶ 30). As the RNC does not dispute, a "defendant's 'refusal to discuss in detail its reasons for filtering emails or to provide an acceptable remedy' [are] insufficient to show a lack of good faith." MTD 18 n.4 (cleaned up) (quoting *Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097,1105 (N.D. Cal. 2011)). Nor does it somehow show political discrimination.

**Third**, the RNC contends that Google knew "the end-of-month, end-of-quarter period was vital to the RNC." Opp. 6. If Google meant to discriminate against the RNC at month-end, though, it does not make sense that the RNC had inboxing issues sometimes at the beginning of the month, sometimes in the middle of the month, and sometimes not at all, at month-end. *See* FAC ¶ 103. And if Google meant to target "vital" periods, Google would also surely have done so when the RNC sent emails almost "hourly" during the 2020 presidential election, when the RNC sent emails over the five weeks leading up to the 2022 elections, and when "the RNC increased its email send volume and frequency" after the 2022 elections. FAC ¶¶ 4, 50, 51, 103. But Google did not, as the RNC admits. FAC ¶¶ 4, 50, 51, 103. The RNC's theory of intentional discrimination, but only for a few days and at certain times, defies "judicial experience

1  and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

2  **Fourth**, the RNC asserts that it did not experience "the same type" of inboxing

3  issue "with other popular email platforms." Opp. 6. But the Amended Complaint be-

4  lies that assertion. As the below graphs from paragraph 105 show (with arrows added

5  for emphasis), RNC emails sent to Microsoft ("MSN") users experienced five inboxing-

6  rate drops of at least 50 percentage points, across five months, with the steepest drop

7  just before the 2022 elections.



15  **Fifth**, the RNC relies on the same allegations from before regarding the North

16  Carolina State University study. Opp. 7 (citing FAC ¶ 107 (previously Complaint ¶ 54)).

17  This Court already found "this study is insufficient, standing alone, to meet the plead-

18  ing requirements." Order 10. None of the RNC's new allegations changes that.

19  **Sixth**, the RNC exclaims that its allegation about the inboxing issue stopping in

20  2022 "is damning" and establishes political discrimination. Opp. 8. Not at all. The

21  RNC's theory for why and exactly when this issue stopped is pure speculation, lacking

22  any factual support. That the RNC does not allege any drop in its inboxing rate after

23  October 2, 2022, FAC ¶ 4, does not suggest—much less plausibly show—that Gmail

24  stopped sending the RNC's emails to spam *because* of this October 22 lawsuit or the

25  November 8 election. *See Holomaxx*, 783 F. Supp. 2d at 1105 ("While [plaintiff]

26  suggests [ulterior motives], it offers no factual support for these allegations."). Indeed,

27  the RNC does not try to dispute that its allegations about its inboxing rates are based

28  on guess-work—not actual Google data—because Salesforce could only attempt "a

statistical analysis … to estimate the inboxing rate." FAC ¶ 36; *see* MTD 2.

The obvious alternative explanation is that the inboxing issue was resolved after "nearly a year" of discussions about it. FAC ¶ 52. The RNC disagrees, speculating that if true the RNC would have experienced similar inboxing issues past October 2022 because it did not change its bulk-email practices. Opp. 7–11. But again, the RNC does not dispute that Gmail's complex spam filters could take time to diagnose and resolve, MTD 18, or that "spam complaints have a lasting negative impact," *Salesforce Guidance*. Nor does the RNC even consider whether the behavior of its email recipients may have changed after early October 2022—even though the RNC recognizes that users' spam complaints are one of the main drivers of inboxing rates. Those are eminently plausible explanations based on the facts alleged here. In contrast, it is pure speculation to conclude, as the RNC urges, that the inboxing issue stopping somehow shows that Google was discriminating against the RNC for its political viewpoints.

Finally, the RNC added two new sets of allegations: (1) Google supposedly cautions its employees on what to "put in writing," and (2) YouTube "'remove[s] or downgrade[s]'" "conservative viewpoints." FAC ¶¶ 109, 110. Neither allegation makes the RNC's political-discrimination theory any more plausible. MTD 21. The RNC appears to concede as much by failing to respond in its Opposition. *See* Opp. 4–12. The RNC therefore forfeits these arguments. *See Carvalho*, 629 F.3d at 888.

All of that reinforces the obvious explanation for the inboxing issue: As Google told the RNC, Gmail sent messages to spam when the RNC periodically built up sufficient user complaints "over the course of the month and [Gmail] eventually cause[d] [RNC] email to be diverted to Gmail users' spam folders" or when the RNC's emails contained suspicious "links." FAC ¶¶ 85, 94. That explains the RNC's high spam-complaint rates. That explains the A/B test. And that explains why, contrary to the RNC's theory that Google targeted vital fundraising periods, inboxing issues occurred sometimes at the start of the month, sometimes mid-month, and sometimes not at all. As compared to that obvious alternative explanation, the RNC's political-

1    discrimination-by-algorithmic-spam-filtering theory has never been plausible.

2         **2.      Section 230(c)(2)(B) and (c)(1) also bar the RNC's claims.**

3         Though the Court did not address these forms of protection previously, Section

4    230(c)(2)(B) and (c)(1) also bar the RNC's claims. *See* MTD 23–25.

5         The RNC contests Section 230(c)(2)(B), arguing that it applies only when a plat-

6    form "hand[s] the censorship tools over to *users*" and that Google is "unilaterally rele-

7    gating the emails to spam, not its users." Opp. 22. But neither is true. Section

8    230(c)(2)(B) applies to algorithmic spam filters that incorporate user complaints. *See*

9    *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1176 (9th Cir. 2009) (rejecting "that

10   § 230(c)(2)(B) cannot apply for the additional reason that [defendant], rather than the

11   customer, determines that [plaintiff] is malware"). Moreover, Google is not filtering

12   emails "unilaterally." As the RNC does not dispute, that process incorporates user

13   feedback "[w]hen Gmail users mark emails as spam." Dkt. 30-13 at 3.[2]

14        Section 230(c)(1) also applies. *See* MTD 24. The RNC again misinterprets Sec-

15   tion 230(c)(1)'s protections as turning on whether the claim "seek[s] to impose liability

16   based on [the published] information's improper content.'" Opp. 25 (second alteration

17   in original) (quoting *Henderson v. Source for Pub. Data, L.P.*, 53 F.4th 110, 120–121

18   (4th Cir. 2022)). But *Henderson* applies when a plaintiff seeks to hold a defendant lia-

19   ble for making content available to others. *See* 53 F.4th at 124 n.18; *Divino Group LLC*

20   *v. Google LLC*, No. 19-cv-04749, 2023 WL 218966, at *2 (N.D. Cal. Jan. 17, 2023) (rec-

21   ognizing this distinction). Here, of course, the RNC seeks to hold Google liable for al-

22   legedly *not* making emails available. Though Google argued this distinction previ-

23   ously, Dkt. 38 at 15, the RNC does not address it. *See* Opp. 25.

24   **III.   Conclusion**

25        For these reasons, Google respectfully requests that this Court grant the

26   Motion and dismiss with prejudice the RNC's Verified First Amended Complaint.

27   _____

28        [2] The RNC also urges this Court to create an exemption to Section 230(c)(2)(B)'s protections for conduct "based on political-affiliation discrimination." Opp. 23. As Google explains, though, the Ninth Circuit has never recognized such an exception. MTD 24 n.6. Nor should this Court.

1    Dated:  February 8, 2024                          **PERKINS COIE LLP**

2

3                                                       By: *Michael R. Huston*

4                                                           Michael R. Huston (*pro hac vice*)
                                                           Sunita Bali, Bar No. 274108
5                                                           Ryan Spear (*pro hac vice*)
                                                           Matthew Koerner (*pro hac vice*)
6                                                           Angie Young Kim, Bar No. 270503
                                                           Tyler Fergusson, Bar No. 345065

7

8                                                       *Attorneys for Defendant Google LLC*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **<u>CERTIFICATE OF SERVICE</u>**

This is to certify that a true and correct copy of the above and foregoing has been served upon all counsel of record, via the Court's CM/ECF system on February 8, 2024, as follows:

Harmeet K. Dhillon (harmeet@dhillonlaw.com)
Michael A. Columbo (mcolumbo@dhillonlaw.com)
Jeremiah D. Graham (jgraham@dhillonlaw.com)
Anthony J. Fusaro, Jr. (afusaro@dhillonlaw.com)
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700

Thomas R. McCarthy (tom@consovoymccarthy.com)
Thomas S. Vaseliou (tvaseliou@consovoymccarthy.com)
Conor D. Woodfin (conor@consovoymccarthy.com)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
Telephone: (703) 243-9423

Counsel for Plaintiff
Republican National Committee

*/s/ Michael R. Huston*
Michael R. Huston